## Case No. 8,219.

### LEIDERSDORF et al. v. FLINT.

[8 Biss. 327; 1 18 Am. Law Reg. (N. S.) 37; 7 Cent. Law J. 405: 7 N. Y. Wkly. Dig. 360; 6 Reporter, 739; 18 Alb. Law J. 382. 429; 13 Am. Law Rev. 390; Cox, Manual Trade-Mark Cas. 360; 11 Chi. Leg. News, 66; 24 Int. Rev. Rec. 373: 35 Leg. Int. 468.]

Circuit Court, E. D. Wisconsin. Nov. 12, 1878.

#### TRADE MARKS—CONSTITUTIONAL LAW.

1. The legislation by congress upon the subject of trade marks, of July 8, 1870 [16 Stat. 198], is unconstitutional.

2. It cannot be sustained under the power to legislate in favor of authors and inventors, nor under the power to regulate commerce.

[Followed in Day v. Walls, Case No. 3,692.]

[This was a bill in equity by B. Leidersdorf and others against J. G. Flint for an injunction. Defendant demurred upon the ground that the court had no jurisdiction. The case is now heard upon the demurrer.]

Winfield Smith, for complainants.
Jenkins, Elliott & Winkler, for defendant.

Before HARLAN, Circuit Justice, and DYER, District Judge.

DYER, District Judge. This is a bill for an injunction to restrain an alleged infringement by defendant of complainant's trade mark, used upon packages of tobacco and registered according to act of congress. Both complainant and defendant are citizens of Wisconsin, and the bill is based upon that provision of section 4942, Rev. St., which gives to the party aggrieved by the wrongful use of his trade mark, a remedy by injunction, according to the course of equity, in any court having jurisdiction over the person guilty of such wrongful use, and is filed upon the theory that this court has jurisdiction to entertain such a bill, though both parties are citizens of the same state. The bill is demurred to, on the ground that the court has no jurisdiction, and the demurrer raises the question of the constitutional power of congress to legislate upon the subject of trade marks. The question is of great importance, and appears to be new, since, with the exception of Duwell v. Bohmer [Case No. 4,213], we were referred upon the argument to no reported case in which it has been determined.

The statutory provisions relating to trade marks are contained in title 60. Rev. St., which is entitled "Patents, Trade Marks and Copyrights." They authorize the registration of trade marks. impose restrictions upon such registration, and confer certain remedies for the protection of the rights of parties who have complied with the requirements of the statute. The remedies thus given are mentioned in section 4,942. which provides that "any person who shall repro-

---

1 [Reported by Josiah H. Bissell. Esq., and here reprinted by permission.]

duce, counterfeit, copy or imitate any recorded trade mark, and affix the same to goods of substantially the same descriptive properties and qualities as those referred to in the registration, shall be liable to an action on the case for damages for such wrongful use of such trade mark, at the suit of the owner thereof; and the party aggrieved shall also have his remedy, according to the course of equity, to enjoin the wrongful use of his trade mark, and to recover compensation therefor in any court having jurisdiction over the person guilty of such wrongful use."

The only clause in the constitution from which it can be well claimed congress derives its power to legislate upon the subject is article 1, § 8, cl. 8, which authorizes congress "to promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." If the power in question is given by this clause of the constitution, then, inasmuch as by section 629, Rev. St., the circuit courts are invested with original jurisdiction of all suits at law or in equity arising under the patent or copyright laws of the United States, and in view of the act of congress of March 3, 1875 [18 Stat. 470], which confers jurisdiction in all civil causes arising under any law of the United States, where the amount in dispute exceeds $500, and of the provisions of section 4942, Rev. St., above referred to, there is ground for claiming that the courts of the United States have jurisdiction in suits which involve the right to trade marks without regard to the citizenship of parties.

But, in contending that the power to legislate upon the subject of trade marks is derived from the constitutional provision before cited, it must be necessarily assumed that the maker of a trade mark is an author or inventor, and that a trade mark is a writing or discovery within the meaning of that clause.

Argument can hardly be needed to demonstrate that a law regulating trade marks is not, in any just sense, a copyright law. The general meaning of the term copyright, is an author's exclusive right of property in the work which he produces. It includes the right of the citizen who is an author of any book or writing, any literary, dramatic or musical composition, any engraving, painting, drawing, map, chart or print, and of models or designs intended as works of art. It is something which appertains to authors who, by their writings and designs, promote the advancement of literature, science and the useful arts. An author, by standard definition is "one who produces, creates or brings into being; the beginner, former or first mover of anything; hence, the efficient cause of a thing. The term is appropriately applied to one who composes or writes a book" or writing, "and in a more general

sense to one whose occupation is to compose and write books" or writings.

So, too, invention implies originality. Originality, not mere mechanical dexterity, is the test of invention. Blake v. Stafford [Case No. 1,504]. It is the "finding out, the contriving, the creating of something which did not exist, and was not known before, and which can be made useful and advantageous in the pursuits of life, or which can add to the enjoyments of mankind." Conover v. Roach [Case No. 3,125]; Ransom v. Mayor of New York [Id. 11,573]. To entitle one to the character of an inventor, he must himself have conceived the idea embodied in his improvement. It must be the product of his own mind and genius. Pitts v. Hall [Id. 11,192].

The dissimilar characteristics of trade marks, and copyrights, and inventions for which patents may be granted, have been pointed out or illustrated in various adjudicated cases. A trade mark has been very well defined as one's commercial signature to his goods. It may consist of a name, symbol, figure, letter, form or device, if adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells, to distinguish the same from those manufactured or sold by another, so that the goods may be known in the market as his, and to enable him to secure such profits as result from his reputation for skill, industry and fidelity. McLean v. Fleming, 96 U. S. 245; Upton, Trade Marks, 9; Taylor v. Carpenter, 2 Sandf. Ch. 604.

The basis of a trade mark right is primarily the encouragement of trade. As the court, in discussing the subject, say in Partridge v. Menck, 2 Barb. Ch. 101, the question in such a case is not whether a person was the original inventor or proprietor of the article made by him and upon which he puts his trade mark, nor whether the article made and sold by another under his trade mark is an article of the same quality or value. But the court proceeds upon the ground, that the complainant has a valuable interest in the good will of his trade or business, and that having appropriated to himself a particular label or sign or trade mark, indicating that the article is manufactured or sold by him or by his authority, or that he carries on his business at a particular place, he is entitled to protection against any other person who pirates upon the good will of his customers or of the patrons of his trade or business, by sailing under his flag without his authority or consent.

The name, word, mark, device, or symbol constituting a trade mark may be devoid of novelty, originality, and of anything partaking of the nature of invention. As the supreme court say in Canal Co. v. Clark, 13 Wall. [80 U. S.] 322, "undoubtedly words or devices may be adopted as trade marks, which are not original inventions of him who adopts them. Property in a trade mark, or rather in the use of a trade mark or name, has very little

analogy to that which exists in copyrights, or in patents for inventions. Words in common use, with some exceptions, may be adopted, if at the time of their adoption, they were not employed to designate the same, or like articles of production." So in McLean v. Fleming, 96 U. S. 245, it is said that trade marks are not required to be new, and may not involve the least invention or skill in their application or discovery.

As is well shown by a writer who has with evident care collated the authorities on the subject, volume 7, Cent. Law J. 143, the foundation of title to a trade mark is priority of adoption and actual use in trade, and it neither in application nor discovery necessarily possesses the elements of originality, novelty or invention.

"The power given to congress to promote the progress of science and useful arts, is restricted to the rights of authors and inventors, and further, their rights are only to be secured for a limited time." Livingston v. Van Ingen, 9 Johns. 566.

This limitation in time is imposed by the constitutional provision itself. But the right to a trade mark is of common law origin, and as a common law right, it is limited only by the period of its use, and ceases only with its abandonment. Property in inventions and discoveries did not exist at common law, and for their protection we have to look wholly to the constitutional provision on the subject.

The consideration for which a grant is made by the public to the author of a new and useful invention, of an exclusive right, is the benefit resulting to the public from the invention. The consent of the inventor to make his invention known and available to others, and ultimately to give it to the public, constitutes the consideration for which he is entitled to receive protection from the government in the form of the grant of an exclusive right. Curt. Pat. preface. Not so with trade marks. For when the exclusive right to use a trade mark terminates, no corresponding benefits result to the public. Its value is gone when it ceases to be exclusive and becomes the property of the public.

Mr. Browne, in his Treatise on Trade Marks, says (page 75): "The rights of inventors and authors, as long settled in Great Britain, were familiar to the framers of the constitution;" and, as Mr. Justice Story says: "It is doubtless to this knowledge of the common law and statutable rights of authors and inventors that we are to attribute the constitutional provision. It was beneficial to all parties that the national government should possess this power; to authors and inventors, because, otherwise, they would have been subjected to the varying laws and systems of the different states on this subject, which would impair, and might even destroy, the value of their rights; to the public, as it would promote the progress of science and the useful arts, and admit the people at large, after a short interval, to the full possession and enjoyment of all writings and inventions, without restraint. In short, the only boon which could be offered to inventors to disclose the secrets of their discoveries, would be the exclusive right and profit of them, as a monopoly, for a limited period."

A copyright is limited by time, a trade mark is not. A copyright is limited territorially, but a trade mark acknowledges no boundaries. They are unlike in their natures.

In every aspect suggested, and in other respects which might be suggested, it would seem that the analogy between property in the use of a trade mark and a patent for an invention, and between a trade mark right and a copyright fails. Property in a trade mark exists independently of statute. It is otherwise with inventions and discoveries. As is said by the court in Rodgers v. Philp, 1 O. G. 31, they "are protected only in consequence of the constitutional provision on the subject, which does not apply to trade marks."

Considering with care the important question involved, and not unmindful that the question, whether a law be void for repugnancy to the constitution, or for want of constitutional authority to enact it, is at all times one of much delicacy, I am constrained to hold that legislation by congress upon the subject of trade marks, is not authorized, either by the letter or spirit of the constitutional provision from which such authority is sought to be deduced. The maker of a trade mark is neither an author nor an inventor, and a trade mark is neither a writing nor a discovery within the meaning and intent of the constitutional clause in question.

It may be added, that the constitutionality of the trade mark statute cannot be sustained under the clause which gives to congress the power to regulate commerce among the several states, nor, in my opinion, under any of the provisions of the constitution which prescribe the legislative powers of congress. From these views, it follows that this court is without jurisdiction to entertain the present controversy, which, as before stated, is between citizens of the same state. Demurrer to bill sustained.

The principle laid down in this decision was affirmed by the supreme court of the United States in U. S. v. Steffens, 100 U. S. 82.