ILLINOIS WATCH-CASE CO. et al. v. ELGIN NAT. WATCH CO.

(Circuit Court of Appeals, Seventh Circuit. June 6, 1899.)

No. 525.

1. TRADE-MARKS—GEOGRAPHICAL NAMES—"ELGIN" WATCHES.

Under the rule established by a uniform course of decision that geographical names cannot be appropriated as trade-marks, the word "Elgin," as applied to watches or watch movements, though exclusively used by a company for so long a time that it has come to be recognized by the public in the United States and foreign countries as designating the particular manufacture of such company, cannot become a trade-mark, so that its registration, under the act of March 3, 1881, will entitle that company, under the act, to protection by a federal court in its exclusive use in foreign trade.[1]

2. SAME—UNFAIR COMPETITION—JURISDICTION OF FEDERAL COURTS

The right to an injunction against unfair competition in trade does not rest on the right of complainant to be protected in the exclusive use of a trade-mark, but upon the ground of fraud; and the federal courts have no jurisdiction of a suit for such an injunction, even with respect to foreign commerce, unless by reason of diversity of citizenship between the parties, or at least its jurisdiction is so limited, and the act of March 3, 1881, by which, if at all, it is conferred, is of such doubtful constitutionality that it will not be exercised in a suit between citizens of the same state.

3. SAME—SUIT FOR INJUNCTION—SUFFICIENCY OF BILL.

A bill for an injunction to restrain defendant from using a name claimed by complainant as a trade-mark, which contains no allegation of actual fraud or fraudulent intent on the part of defendant, is insufficient to entitle the complainant to relief, unless his right to the exclusive use of the name as a trade-mark is established.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The appellee, the Elgin National Watch Company, filed its bill in equity in the court below, setting forth that it was a corporation organized under the laws of the state of Illinois, and having its principal place of business at Elgin, and its office at Chicago, in that state; that the defendant, the Illinois Watch-Case Company, is a corporation created and organized under the laws of the state of Illinois, and having its principal place of business at Elgin, in that state; that the other defendants named were citizens of the state of Illinois, and were, respectively, the defendant Duncan, president, treasurer, and superintendent, and the defendant Abrahams, secretary, of the Illinois Watch-Case Company; that prior to April 11, 1868, the complainant engaged in manufacturing watches at Elgin, then a small town containing no other manufactory of watches or watch cases; that the complainant built up a large business in such manufacture; that the watches and watch movements so made by complainant have become known all over the world, and have been largely sold and used both in the United States of America and in foreign countries; that before that date the complainant had adopted the word "Elgin" as a trade-mark for its watches and watch movements, which word was marked upon the watches

---

[1] As to right to use geographical names as trade marks and names, see note to Hoyt v. J. T. Lovett Co., 17 C. C. A. 657.

and watch movements, both those which entered into commerce in this country and those exported to and sold in foreign countries, and that the complainant's watches became known all over the world as Elgin watches, which word declared their origin and source as a product of the complainant's manufacture, and they became known from those of all other watches by the distinguishing word or trade-mark "Elgin," which word, at the time of its adoption, had been appropriated by no other person, firm, or corporation as a trade-mark or designation of goods; that this trade-mark the complainant caused to be registered on the 19th day of July, 1892, under the act of congress, relating to the registration of trade-marks, approved March 3, 1881 (21 Stat. 502); that the defendants have infringed upon the rights of the complainant by engraving or otherwise affixing the word "Elgin" to watch cases made and sold by them; that such watch cases are adapted to receiving watch movements of different construction from those made by the complainant; that inferior watch movements are liable to be, and often are, incased in them, and, when so incased, the entire watch, including both movement and case, appears upon the market with the word "Elgin" upon it, thereby leading the public to believe that such watch, as an entirety, was made by the complainant, and enabling parties unlawfully using the word "Elgin" to profit by the great reputation of the complainant, to palm off other and inferior goods as the goods made by the complainant, to injure the reputation of the complainant as a watchmaker, and to deprive it of a portion of the business and patronage which it would otherwise receive from the public. The prayer of the bill is for an injunction to restrain defendants "from directly or indirectly making or selling any watch case or watch cases marked with your orator's said trade-mark, and from using your orator's said trade-mark in any way upon watches or watch cases, or in the defendant's printed advertisements, circulars, labels, or on boxes or packages in which the said watch cases are put up or exposed for sale." A demurrer interposed to this bill being overruled, defendants answered, denying the legality of the registration of the trade-mark, denying the right of the complainant to the exclusive use of the word as a trade-mark, asserting that they had never manufactured or sold, or offered for sale, watches or watch movements, but that they manufactured at Elgin watch cases only, and that the complainant had never manufactured or sold watch cases with the word "Elgin" upon them; that the business of the two corporations are distinct and separate, the one from the other, and that, whenever the defendant company had used the name "Elgin," it had usually, if not invariably, been done in connection with some other word, as "Elgin Giant," or "Elgin Commander," or "Elgin Tiger," or some other word used in combination with the word "Elgin" or "Elgin, Illinois"; that the company has seldom, if at all, used the word "Elgin" alone or separately as registered by the complainant upon goods exported to foreign nations or used in foreign commerce, but only in domestic commerce, and to inform the public of the place where the watch cases of the defendant company were manufactured; that such watches were sold upon a guaranty running for a number of years, so that it became necessary to inform purchasers of the city where the defendant company was carrying on its business, that purchasers might be able to find the company in case it became necessary to call upon it to make good its guaranty; that the term "Elgin" is a geographical name, indicating the name of a prominent manufacturing city, and that any manufacturer of watches, watch movements, or watch cases is at liberty to locate or carry on his business thereat, and that the name may not be appropriated by any single manufacturing person, firm, or corporation, but is open, as a common right, to the use of any person carrying on business at that city. To this answer there was a general replication, and, upon proofs taken, the parties proceeded to a hearing. By leave of the court at or immediately after the hearing and before decree, the complainant amended its bill, alleging that the watch cases so manufactured and marked by the defendants in violation of the complainant's right "are intended by the defendants to be sold in foreign countries, and are in fact exported to and sold in foreign countries." A decree passed for the complainant that the use of the word "Elgin," whether alone or in connection with other words, was a violation and infringement of the complainant's exclusive rights in the premises, and that an injunction issue restraining the use of the word "Elgin" alone or in connection with other words or devices upon watches or

watch cases, or upon packages containing watches or watch cases, going into commerce with foreign nations or with the Indian tribes, in such a way as to be liable to cause purchasers or others to mistake said watches or watch movements incased in such watch cases for watches or watch movements manufactured by the complainant. The opinion of the court below is reported. Elgin Nat. Watch Co. v. Illinois Watch-Case Co., 89 Fed. 487.

Thomas A. Banning and Ephraim Banning, for appellants.
Lysander Hill, for appellee.

Before WOODS and JENKINS, Circuit Judges, and BUNN, District Judge.

JENKINS, Circuit Judge, upon this statement of the case, delivered the opinion of the court.

It was ruled in Trade-Mark Cases, 100 U. S. 82, that the act of congress approved August 14, 1876 (19 Stat. 141), was void for want of constitutional authority, but the court expressly left the question undecided "whether the trade mark bears such a relation to commerce, in general terms, as to bring it within congressional control when used and applied to the classes of commerce which fall within that control." That the congress had no power, under the commerce clause of the constitution, to regulate the subject, was ruled by the circuit court of the United States for the Eastern district of Wisconsin in Leidersdorf v. Flint, 8 Biss. 327, Fed. Cas. No. 8,219. This is the only direct adjudication upon that question. Following the decision of the supreme court in the Trade-Mark Cases, the congress of the United States enacted the present law (Act March 3, 1881; 21 Stat. 502), limiting its operations to trademarks used in commerce with foreign nations or with the Indian tribes. There has been no ruling upon the constitutionality of this act, and it need only be said that its validity is fairly doubtful.

The appellee, the complainant below, by its bill asserts and seeks to maintain its right to the use of the word "Elgin" as a trademark, claiming that right as one arising under federal law. It is, of course, clear that this bill cannot be sustained, all of the parties to it being citizens of the same state, unless its right can be sustained as one arising under the laws of the United States. The statute does not define what shall constitute a trade-mark. To determine, therefore, what that trade-mark is which is protected by this statute, we must be referred to the common law. It is not now a question that no one can acquire an exclusive right to the use of geographical names as trade-marks. Canal Co. v. Clarke, 13 Wall. 323; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 547, 11 Sup. Ct. 396; Chemical Co. v. Meyer, 139 U. S. 542, 11 Sup. Ct. 625; Mill Co. v. Alcorn, 150 U. S. 464, 14 Sup. Ct. 151; Mills Co. v. Eagle, 58 U. S. App. 490, 30 C. C. A. 386, and 86 Fed. 608; Iron Co. v. Uhler, 75 Pa. St. 467; Elgin Butter Co. v. Elgin Creamery Co., 155 Ill. 136, 40 N. E. 616. In Mill Co. v. Alcorn, supra, the court observes that "the word 'Columbia' is not a subject of exclusive appropriation, under the general rule that a word or words in common use as designating locality or section of country cannot be appropriated by any

one as his exclusive trade-mark.  *  *  *  The appellant was no more entitled to the exclusive use of the word 'Columbia,' as a trademark, than he would have been to the use of the word 'America,' or the 'United States,' or 'Minnesota,' or 'Minneapolis.' These merely geographical names cannot be appropriated or be made the subject of exclusive property. They do not in and of themselves indicate anything in the nature of origin, manufacture, or ownership." But, while one cannot obtain the exclusive right to use a geographical name as a trade-mark, and cannot make a trade-mark of his own name to deprive another of the same name from using it in his business, that other may not resort to artifice to do that which is calculated to mislead the public as to the identity of the business or of the article produced, and so create injury to the other beyond that which results from the similarity of name.  There are a large number of cases in which this principle has been declared.  Croft v. Day, 7 Beav. 84; Holloway v. Holloway, 13 Beav. 239; Wotherspoon v. Currie, L. R. 5 H. L. 508; Thompson v. Montgomery, 41 Ch. Div. 35; Reddaway v. Banham (1896) App. Cas. 199; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625; Coates v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 186, 16 Sup. Ct. 1002; American Waltham Watch Co. v. U. S. Watch Co. (Mass.; March, 1899) 53 N. E. 141. We have spoken to the same effect, and with no uncertain sound.  Meyer v. Medicine Co., 18 U. S. App. 372, 379, 7 C. C. A. 558, and 58 Fed. 884; Pillsbury v. Mills Co., 24 U. S. App. 395, 12 C. C. A. 399, and 64 Fed. 211; Mills Co. v. Eagle, 58 U. S. App. 490, 30 C. C. A. 386, and 86 Fed. 608; Kathreiner Malzkaffe Fabriken mit Beschraenkter Haftung v. Pastor Kneipp Med. Co., 53 U. S. App. 425, 27 C. C. A. 472, and 82 Fed. 321; Johnson v. Bauer, 53 U. S. App. 437, 27 C. C. A. 374, and 82 Fed. 662; Raymond v. Baking-Powder Co., 55 U. S. App. 575, 29 C. C. A. 245, and 85 Fed. 231. This class of cases does not proceed upon the ground of an infringement of a trade-mark, but upon the ground of fraud, and that equity will not permit one, aside from any question of trade-mark, to palm off his goods as the goods of another, and so deceive the public, and injure that other. It is not necessary in such cases, in order to give a right to an injunction, that a specific trademark should be infringed (McLean v. Flemming, 96 U. S. 245, 250), but that the conduct of the party should show an intent to palm off his goods as the goods of another. The allegations respecting trademarks are in such cases only "regarded as matter of inducement leading up to the question of actual fraud." The court below sustained this bill upon the ground that the word "Elgin" had acquired a secondary signification, and through a long course of business had come, as applied to watches, to designate the manufacture of the appellee, and as an article of approved excellence, and that therefore the word in that connection performed distinctly the function of a trade-mark, and could be registered and upheld as a trade-mark, under the act of congress. In this we think there was error. The word "Elgin" was not, and could not be, made a trade-mark. The fact that the

word had acquired that signification might be forceful if the word was shown to be used to palm off the goods of one as the goods of another, which, coupled with other evidence evincing intent to mislead and to defraud, would be operative to move a court of equity to prevent the wrong.   It is said that the evidence in this case is of that persuasive character which irresistibly leads to the conclusion that here was such gross fraud that a court of equity should not stay its hand, but should enjoin the guilty party from further deception and wrong.   Unfortunately, however, if we should concur with counsel to the full extent of his contention, we are, as we think, without jurisdiction to grant relief; or, to say the least, that jurisdiction is of so doubtful a nature and so limited in extent, and under an act of doubtful constitutionality, that we must decline to exercise it. The right of the appellee arises under the act of congress, and is limited to a trade-mark.   By the statute, the right of action is given to him to recover damages "for the wrongful use of said trade-mark," or he may have his remedy, according to the course of equity, "to enjoin the wrongful use of such trade-mark used in foreign commerce or commerce with the Indian tribes."   It is only by virtue of that statute, and for the protection of a right arising under the federal law, that the appellee has standing in the federal court, for all the parties to this suit are citizens of the same state.   The remedy in equity for fraud, to which we first referred, is one which existed before the statute, and is not given by it.   It was not applied to protect the infringement of a trade-mark, but, recognizing the invalidity of the supposed trade-mark, was applied for the prevention of fraud; and, that a federal court may have jurisdiction in such a case, we think there must exist and appear from the record the necessary diverse citizenship of the parties.   It may also be remarked that this bill is not framed upon any theory of fraud or fraudulent conduct upon the part of the defendants thereto, except as it is to be inferred from the use of the complainant's registered trade-mark.   It is not alleged that they have ever represented or sold their goods as the goods manufactured by the complainant.   The one is a manufacturer of watch movements, the other of watch cases.   To be sure, it is claimed, and possibly is established by the proof, that the watch cases of the appellants have been used by dealers to contain watch movements of inferior quality to those made by the appellee, and possibly the purchaser deceived into believing that he had purchased a watch manufactured by the appellee.   But this is not charged to have been done by the appellants, or with their knowledge or consent, or that they have entered into any scheme or combination to impose upon the public.   The only imposition suggested is the possibility that from the general reputation of the watches manufactured by the appellee, and their known designation as Elgin watches, confusion is likely to result, and the purchaser be induced to purchase the one article when he desires another.   That might result from the lawful use of a geographical name, and is without remedy, unless coupled with fraud upon the part of the appellants or those acting for and under them. However strong, the proof must respond to the allegations of the bill.

So that, whether we consider the case from the standpoint of jurisdiction, or from the case made by the bill, we are constrained to the conclusion that the decree below was erroneous. The courts of the state furnish ample remedy for the wrong, if any, under which the appellee suffers. We have no right to redress or prevent trespass upon the common-law rights of the appellee, the citizenship of the parties forbidding jurisdiction. If it were allowable to us to assume jurisdiction to grant equitable relief upon the ground of fraud, if the bill were aptly framed to that end, the relief could only extend in restraint of the wrong, so far as it affected foreign commerce and commerce with the Indian tribes. The proofs show that such commerce in the case before us has been so slight as to be practicably immaterial, and that the real controversy is concerning state and interstate commerce in the manufactured article. Complete remedy for the wrongs suffered by the appellee can only be given in the courts of the state in which the parties are resident. It is therefore not becoming, as we think, to assume a doubtful jurisdiction under a statute of doubtful validity. The decree is reversed, and the cause remanded, with direction to the court below to dismiss the bill.