ALLEN B. WRISLEY CO. v. IOWA SOAP CO. et al.

(Circuit Court of Appeals, Eighth Circuit. March 30, 1903.)

No. 1,794.

1. TRADE-MARK—GEOGRAPHICAL TERM MAY NOT BE—"OLD COUNTRY."

Geographical terms and words in common use to designate a locality, a country, or a section of a country cannot be monopolized as trade-marks. "Old Country" may not be a technical trade-mark.

2. SAME—UNFAIR COMPETITION—DECEIT BASIS OF.

The deceit or probable deceit of the ordinary purchaser so that he buys or probably will buy the articles of one manufacturer or vendor as those of another is an indispensable element of a cause of action for unfair competition.

3. SAME—DRESS WHICH DISTINGUISHES TO PURCHASER USING ORDINARY CARE SUFFICIENT.

It is the duty of a manufacturer or vendor to use a name and dress for his goods which will enable common purchasers, who use ordinary care to discover whose manufacture or property they are purchasing, to avoid buying his goods as those of his competitors. But he is not required to so distinguish his articles that careless and indifferent buyers will know by whom they are made or sold. His competitor has no better right to the monopoly of the trade of the negligent and indifferent than he has.

4. SAME—USE OF "OUR COUNTRY'S" AGAINST "OLD COUNTRY" DOES NOT CONSTITUTE.

The plaintiff had established a large and lucrative trade in a superior brand of soap which it called and marked "Old Country Soap." The defendant made and sold a soap which it called and branded "Our Country's Soap." The packages of the two manufacturers were of the same size and shape, but the dress of the defendant's product bore the defendant's name and its place of manufacture, and was so unlike that of the plaintiff that it was not likely to deceive a common purchaser who exercised ordinary care. Held, the use of the term "Our Country" as a brand or name for the soap under these circumstances did not constitute unfair competition.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Taylor E. Brown (C. Clarence Poole and Wm. J. Roberts, on the brief), for appellant.

W. E. Blake, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge. The complainant, Allen B. Wrisley Company, a corporation, and its predecessor, manufactured at Chicago, in the state of Illinois, and sold throughout the country in pound packages, a soap which they branded "Old Country Soap," from 1876 until the commencement of this suit. In 1898 the Iowa Soap Company, the defendant, commenced to make and has since manu-

¶ 1. Use of geographical names as trade-names, see notes to Hoyt v. J. T. Lovett Co., 17 C. C. A. 657; Illinois Watch-Case Co. v. Elgin Nat. Watch Co., 35 C. C. A. 242.

¶ 2. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

factured at Burlington, in the state of Iowa, and sold throughout the country a soap in pound packages, which it branded "Our Country's Soap." The complainant exhibited its bill to restrain the Iowa company from the use of the name "Our Country's" upon its soap on the ground that the use of it infringed its trade-mark "Old Country," which it had registered in the Patent Office, and constituted unfair competition.

But geographical terms and words in common use to designate a locality, a country, or a section of a country cannot be monopolized as trade-marks. Shaver v. Heller & Merz Co., 108 Fed. 821, 831, 48 C. C. A. 48, 59; Canal Co. v. Clark, 13 Wall. 311, 321, 20 L. Ed. 581; Mill Co. v. Alcorn, 150 U. S. 464, 14 Sup. Ct. 151, 37 L. Ed. 1144; Chemical Co. v. Meyer, 139 U. S. 540, 546, 11 Sup. Ct. 625, 35 L. Ed. 247; Manufacturing Co. v. Trainer, 101 U. S. 51, 56, 25 L. Ed. 993; Goodyear's India-Rubber Glove Mfg. Co. v. Goodyear Rubber Co., 128 U. S. 598, 602, 9 Sup. Ct. 166, 32 L. Ed. 535; Continental Ins. Co. v. Continental Fire Ass'n (C. C.) 96 Fed. 846; Brown Chemical Co. v. Frederick Stearns & Co. (C. C.) 37 Fed. 361; Chemical Works v. Muth (C. C.) 35 Fed. 524, 1 L. R. A. 44; Illinois Watch-Case Co. v. Elgin Nat. Watch Co., 94 Fed. 667, 35 C. C. A. 237; New York & R. Cement Co. v. Coplay Cement Co. (C. C.) 45 Fed. 212; Iron Co. v. Uhler, 75 Pa. 467, 15 Am. Rep. 599; Connell v. Reed, 128 Mass. 477, 35 Am. Rep. 397; Morgan Envelope Co. v. Walton, 86 Fed. 605, 30 C. C. A. 383. "Old Country" is a term in common use to designate a country occupied by civilized man before the American continent was. It plainly means a different country from our country, just as the "Old Continent" means the continent of Europe as distinguished from our continent. It is both a geographical term and a term in common use to designate a country. The complainant may not, therefore, exclude others from its use, or become the owner of any property in it as a trade-mark. Hence its bill cannot be sustained for infringement of a technical trade-mark.

But the use of geographical or descriptive words to institute or maintain unfair competition may be lawfully enjoined by a court of equity to the same extent as the use of any other terms or symbols (Shaver v. Heller & Merz Co., 48 C. C. A. 48, 108 Fed. 832, and cases there cited), and counsel for the complainant insist that it is entitled to an injunction on the ground of unfair competition. Deceit is the basis of suits of this character. The intention to palm off one's goods as those of another, and the use of suitable means to effect that intention, are both essential elements of a good cause of action for unfair competition. The intention alone, without the actual or the probable use of means calculated "to convey a false impression to the public mind, * * * and to mislead and deceive the ordinary purchaser," furnishes no ground for relief, because an intent to injure, where no injury is or will be inflicted, causes no legal damage. McLean v. Fleming, 96 U. S. 254, 256, 24 L. Ed. 828; Kann v. Diamond Steel Co., 89 Fed. 706, 712, 32 C. C. A. 324, 330; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 561, 77 Fed. 869, 876. Here, as elsewhere in the entire domain of human action, though, the intent may be lawfully inferred from the words

and deeds of the actor on the familiar principle that every one is pre-sumed to intend the natural and probable effect of his acts. In searching for this intent, however, and in considering the means adopted by a manufacturer or a vendor to sell his articles of merchandise, it must be remembered that the intent to institute or to maintain fair competition and the use of reasonable means to effect this purpose are to be commended and promoted, not restrained. Every manufacturer and vendor has the undoubted right to sell the goods he makes or owns to the public, to his own customers, and to the customers of his competitors if he can, at lower prices and on better terms than those furnished by them, and by these and by all fair means to divert their trade to himself, even though his activity and enterprise may destroy the business of his rivals. The only intention the law condemns is the purpose of a manufacturer or vendor to palm off his own goods as those of his competitor, and the only acts from which such an intention may be lawfully inferred are those whose natural and probable effect is to perpetrate such a fraud. The line of demarcation between acts indicative of a lawful and of an unlawful intent here runs wide and clear between those which would not and those which would be likely to induce the common purchaser, when exercising ordinary care, to buy the article of the vendor as the product or property of his competitor. The duty is imposed upon every manufacturer or vendor to so distinguish the article he makes or the goods he sells from those of his rival that neither its name nor its dress will probably deceive the public or mislead the common buyer. He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacture or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition. Centaur Co. v. Marshall, 97 Fed. 785, 789, 38 C. C. A. 413, 417; Coats v. Thread Co., 149 U. S. 564, 567, 572, 573, 13 Sup. Ct. 966, 37 L. Ed. 847; Kann v. Diamond Steel Co., 89 Fed. 706, 707, 32 C. C. A. 324, 325; Manufacturing Co. v. Spear, 2 Sandf. 599, 606; Canal Co. v. Clark, 13 Wall. 311, 322, 20 L. Ed. 581; Gorham Co. v. White, 14 Wall. 511, 528, 20 L. Ed. 731; McLean v. Fleming, 96 U. S. 245, 255, 256, 24 L. Ed. 828; N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 23 C. C. A. 554, 561, 77 Fed. 869, 876.

There is no direct evidence in this case that the defendant intended to palm off its soap as that of the plaintiff, and the only question is whether it so named and dressed its goods that they were calculated to induce a purchaser who was using ordinary care to buy them as the articles made by the complainant. The name which the defend-

ant used did not have the same sound nor convey the same idea as that which was used by the complainant. Our country is not the old country. Old country linen is not our country's linen. Old country books are not our country's books. And the term "Our Country's Soap" distinguishes the article which bears this brand from "Old Country Soap," rather than identifies it with it. Each of the corporations made and sold its soap in pound packages wrapped in manilla paper. The color of the wrapper of the complainant is blue and buff, and it bears the inscription: "Allen B. Wrisley's Trademark Old Country Soap Manufactured by Allen B. Wrisley Co., Chicago." The colors of the defendant's wrapper are red, white, and blue, but the prevailing color is red. Upon this wrapper are printed the words: "Our Country's Soap Iowa Soap Company, Manufacturers, Burlington, Iowa." The arrangement of the words and the style of the letters used upon the latter wrapper differ radically from those upon the former, and when the dresses of the two soaps are submitted to the arbitrament of the eyes the decision is instant and irrevocable that they could not deceive any purchaser, who exercised any degree of care, into buying the product of one of these competitors for that of the other. There is testimony in the record that some people have bought, and that some retail dealers have sold some of the soap of the defendant as that of the plaintiff. But this evidence falls far short of satisfactory proof that either purchasers or dealers could have been deceived into buying or selling one for the other if they had exercised any ordinary degree of care to ascertain whose manufacture they were purchasing either by listening to the name of the article or by glancing at the wrapper which inclosed it. The evidence upon this question of unfair competition is voluminous, and it cannot be repeated here. Suffice it to say that it was exhaustively reviewed and carefully analyzed by Hon. William C. Howell, the master in chancery in this case, in one of the most complete and satisfactory reports it has been our good fortune to consider, and it was again considered on exceptions to this report by the learned District Judge. They have both reached the conclusion that the name upon the soap, the wrappers, and the acts of the defendant had no tendency to give the public the false impression that its product was the manufacture of the plaintiff, or to mislead or deceive the ordinary purchaser into taking it for the plaintiff's manufacture, and that it neither engaged in, nor intended to engage in, unfair competition. And our examination of the case has convinced us that this is the only conclusion which the evidence contained in this record will sustain. The decree below must accordingly be affirmed, and it is so ordered.

THAYER, Circuit Judge. The foregoing opinion contains the statement that "the use of geographical or descriptive words to institute or maintain unfair competition may be lawfully enjoined by a court of equity to the same extent as the use of any other terms or symbols," and the case of Shaver v. Heller & Merz Co., 48 C. C. A. 48, 108 Fed. 821, 832, is cited in its support. If the doctrine intended to be expressed by this statement be that a court of equity may en-

join the use of geographical and descriptive words, which are the common property of all persons, and which cannot be monopolized by any one as a trade-mark, when no other means are employed to produce confusion of goods save the use of such words—that is to say, when the packages or articles to which such words are applied are not put up in such a way as to occasion deception, and no deception is practiced except by the use of geographical or descriptive words that are public property—then I dissent from the foregoing statement of the law, as I did in the case of Shaver v. Heller & Merz Co., when it was first enunciated, and for the reasons stated in that dissent. In all other respects I concur in the foregoing opinion, and in the affirmance of the decree of the lower court.