## GERMER STOVE CO. v. ART STOVE CO.

(Circuit Court of Appeals, Sixth Circuit. January 18, 1907.)

### No. 1,579.

**1. PATENTS—INFRINGEMENT—STOVE LININGS.**

The Condit patent, No. 358,545, for a lining for stoves or furnaces, is limited by the prior art to a lining having vertical air cells therein, open at the bottom below the grate and closed at the top, and having narrow slit openings from such cells into the fire chamber. As so limited, *held* not infringed.

**2. SAME—AGGREGATION OF OLD ELEMENTS—INDEFINITENESS.**

The Germer patent, No. 587,366, for improvements in fire pots and grates for stoves, claim 1, which is for a fire pot having vertical air passages in the walls thereof and vertical slits connecting the same with the inside of the fire pot in combination with a substantially closed grate, is void as not disclosing a true combination, but a mere aggregation of old elements, each performing its old function independently of

the other. Claim 2, which is for the same fire pot in combination with a supporting ring at the top and a grate having the openings therein so constructed as to admit "but a small portion" of the air necessary for combustion therethrough, is void for indefiniteness of description as to the third element.

**8. TRADE-MARKS AND TRADE-NAMES—RIGHT TO PROTECTION IN USE OF NAME—.UNFAIR COMPETITION.**

The words "XX Century Fire Pot," used to designate a patented fire pot both by complainant and another concern, each of which made and sold furnaces or stoves containing such fire pot, cannot be protected as a trade-name of complainants, even if such words were capable of being so monopolized and used to indicate the origin of the article; nor, where such words were not placed upon the stoves of complainant, but merely used in its advertisements, the stoves having another name, can a defendant be charged with unfair competition in selling a stove under the name "Twentieth Century Laurel," with its name as maker plainly shown thereon.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

H. C. Lord, for appellant.

James Whittemore and C. H. Burton, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. · Bill to restrain infringement of patent No. 358,545, to Condit, for "improvements in linings for furnaces, etc.," and of patent No. 587,366, to Germer, for improvements in fire pots and grates for stoves. Both patents by assignment have come to the complainant. The averment is that the invention of both patents has been used in one and the same infringing stove, made by the defendant. The bill also seeks relief upon the theory of unfair trade and violation of a common-law trade-mark in the words "Twentieth Century" as applied to stoves having the fire pot embodying the inventions of the patents mentioned.

1. The Condit Patent. This patent was issued in 1887, and the inventor, after having confessed that there had been many plans for accelerating combustion by delivering the air in a heated condition, says that his object is to "produce a lining for hot-air furnaces, stoves, etc., which will serve to heat and deliver the air more effectually, and which will allow for expansion and contraction, thereby preventing fracture and rendering the lining more durable." The single claim of his patent is in these words:

"The herein-described lining for furnaces, consisting of one or more plates, B, provided with the vertical cells, c, closed at their upper ends and having their lower ends open outside of the grate space, with vertical slits, e, connecting said cells, c, with the inner surface of the plate from the top to the bottom of said plate, substantially as shown and described." ·

It was not new to construct fire pots or the linings of such pots in separate plates or staves. Such constructions are to be seen in the earlier patent of Stiles of March 17, 1868, Van Benthuysen of August 8, 1871, as well as others here in evidence. The first element of Condit's claim is plates, "provided with the vertical cells, c." These he describes as being "open at the bottom for the free admission of air, and which extend upward to near the top of the plate." "Each of these cells, c, has a slit, e, extending from it out through the front

face of the plate." Condit's air cells and communicating slits, as shown by the drawings of his patent, are shown by the figure below, being a top plan view.

· E · C  CONDIT ·
NO· 358 · 545 ·

The early patent to Stiles shows identical cells. The figure below shows a top plan view, being figure 3 from the Stiles drawings.

Fig. 3.

Stiles says that his fire pot is composed of a series of cast iron staves, fitting together at top and bottom, in rings, etc. These staves he described as "so cast as to form longitudinal air-passages or grooves, c, c, through the walls of the fire pot." "I prefer," he says, "to cast half a groove in each side of a stave," etc.; "but, if desired, the whole groove may be formed in the center of each stave." These grooves extend from bottom to top of the fire pot. He concludes his description thus:

"From the grooves, c, c, numerous perforations, slots, or equivalent passages, f, f, open radially to the interior of the fire pot, thus covering its whole inner surface with air holes, as indicated."

Stiles' claim is:

"In combination with a fire pot, made of a series of staves having air passages passing directly through the walls of the fire pot from the base, and

a series of perforations, slots, or equivalent passages opening through the walls of the fire pot to admit air to burn the gases."

Manifestly, Condit's "air cells" "provided with vertical slots" are anticipated by the air passages of Stiles, provided with a "series of perforations, slots, or equivalent passages." Stiles' air passages are not described as closed at the top. Condit's are. Condit claims in his specifications that the advantage of closing them at the top "is to deflect the heated air inward as it escapes therefrom, thus, as it were, injecting it into and causing it to more thoroughly mingle with the gases and smoke as they rise from the fuel." It is not stated that Stiles' air cells open below outside of the grate; but, as it is stated that they extend from top to bottom, that is the inference. The idea was; in no event, new. The patent to Van Benthuysen, No. 117,833, shows such air cells opening below outside the stove grate.

It is plain that Condit's patent cannot be sustained, unless we limit him to air cells closed at the top, and having narrow slit openings into the fire chamber. The advantage of his cell with narrow slits opening into the fire chamber is pointed out by him in his specifications "as dividing the air into a number of thin currents, thereby more thoroughly and highly heated and more effectually mingled with the products of combustion." Thus limited, the defendant does not infringe. In defendant's construction he uses no cell or passage as distinguished from a slot opening into the fire pot. The air passages of the defendant are nothing more than vertical U-shaped slots opening directly into the fire, which taper from the lower part to the top. Neither are these air slots closed at the top. The drawing below shows construction of defendant's fire pot, and also that of the Condit patent, which is placed in contrast that the difference may be better seen.

COMPLAINANTS. FIRE POT

DEFENDANTS. FIREPOT

2. The Germer Patent. The claims of this patent are two in number. The first is for a fire pot "having vertical passages in the walls thereof, and vertical slits connecting said passages with the inside of the fire pot," in combination with "a substantially closed grate." The second is for the same fire pot in combination with a supporting ring at the top "having openings therein registering with the vertical pas-

sages," and "a grate having the openings therein so constructed as to admit but a small portion of the air necessary for combustion therethrough." Germer has done no more in his first claim that to unite the Condit fire pot with a grate in which the amount of air might be controlled by a damper. There is nothing new in his fire pot, for it is the fire pot of Condit. There is no invention in his grate, for grates in which the supply of air may be regulated were not new. The claim covers a mere aggregation of elements, the fire pot and the fire grate each producing its own effect after as before the combination, each operating in the combination as it did before. The mere bringing together of old parts and allowing each to work out its own old effect, without producing some new product or result as a consequence of the union and co-operating action, is a mere mechanical juxtaposition. Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., 116 Fed. 363, 370, 53 C. C. A. 583; Overweight Counterbalance Elevator Co. v. Henry Voight Mach. Co., 102 Fed. 957, 43 C. C. A. 80.

The second claim includes a hollow ring at top of air cells. This may be an improvement upon the Condit organization. But the third element is a grate having the openings therein arranged so as to admit but a small portion of the air necessary for combustion. Section 4888, Rev. St. [U. S. Comp. St. 1901, p. 3383], requires that one desiring a patent shall state—

"The manner and process of making, constructing, compounding and using it in such clear, concise and exact terms as to enable any person, skilled in the art or science to which it appertains, * * * to make, construct, compound, and use the same."

"If the description be so vague and uncertain that no one can tell, except by independent experiments, how to construct the patented device, the patent is void." The Incandescent Lamp Patent, 159 U. S. 465, 474, 16 Sup. Ct. 75, 40 L. Ed. 221; Goodyear Tire & Rubber Co. v. Rubber Tire Wheel Co., 116 Fed. 363, 376, 53 C. C. A. 583. Judge Swan, who tried the cause below, said of this claim that it was—

"Void for indefiniteness. There is no ratio stated between the volume of air passing through the grate and cells respectively, nor is there anything to define what is meant by a practically closed grate. If this information can be obtained only by experiment, as the experts all agree, the defect is fatal to the claim."

For the reasons stated, both claims of this patent are void.

Unfair Trade. Complainants do not claim a technical common-law trade-mark. The name "XX Century Fire Pot" is not affixed upon or attached to their stoves or fire pots. They claim only to have made and sold a stove, styled "Radiant Home Stoves," a name marked upon all of their stoves containing their fire pot. But they say they advertise extensively that their "Radiant Home Stoves," contain the "XX Century Fire Pot," and that the fire pot made under the Condit and Germer patents has come to be known as the "XX Century Fire Pot." The defendant makes a stove which includes a fire pot or lining made under their patent to H. H. Sanford, No. 661,707, being the alleged infringing device heretofore considered, which they call the "Twentieth Century Laurel." Every such stove has plainly marked upon it the name of the maker, the "Art Stove Company." This description of the fire pot used by the complainant as the "XX Century Fire Pot"

did not even originate with them, nor in respect to any stove. Prior to complainant's use of this phrase, a firm of furnace makers, called Clerkin & Maag, made a fire pot for their furnaces which they called and advertised as the "XX Century Fire Pot." This firm was then supposed to control the patents controlling the fire pot they so designated, being the structures described in the Condit patent. The arrangement made with Clerkin & Maag was that the complainant might use the name "Twentieth Century," as applied to this construction of fire pot, in the stove made by them. Clerkin & Maag were to continue its use of same fire pot in their furnaces, and complainant was to refer purchasers of furnaces who wished that fire pot to them. Thus it is plain that the term was to be used as descriptive of a certain construction, and not as a trade-name indicating origin. Descriptive words, or words in common use, as designations of locality, section, or division of time, cannot be exclusively appropriated as trade-marks or trade-names, indicating origin, ownership, or manufacture. Columbia Mill Co. v. Alcorn, 150 U. S. 460, 464, 14 Sup. Ct. 151, 37 L. Ed. 1144, where it was held that the word "Columbia" could not be so monopolized; Koehler v. Sanders, 122 N. Y. 65, 52 N. E. 235, 9 L. R. A. 576, where a like ruling was made in respect to the word "International." In Wrisley Co. v. Iowa Soap Co., 122 Fed. 796, 59 C. C. A. 54, it was held that the words "Old Country" would not be a valid trade-name. In Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 967, 55 C. C. A. 459, we held that the word "computing," as applied to a class of scales which indicated weight and price, was a descriptive word, and not capable of monopoly. In the last-cited case we stated the circumstances under which a geographical or descriptive word might come to have a secondary meaning, and its use in such sense protected against like use for the purpose of deceit, in these words:

"If the complainant has a technical trade-mark in the words 'computing,' its use by others will be restrained; for a wrongful intent in so using it will be presumed. But when the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vender, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vender to sell his article as the product of another."

Evidence that the stove made and sold by the defendant is so made, marked, and designated as to probably deceive the ordinary purchaser into buying it as the stove made and sold by the complainant, is an indispensable element to sustaining that aspect of this multifarious bill which seeks relief upon the ground of unfair trade. The stove made by the defendant does not infringe the Condit patent; neither is it put upon the market under any such description or designation as is likely to deceive a purchaser into buying it as a stove made by the complainant. Defendant has as much right to call its stove a "XX Century Laurel," provided it is plainly made to appear that it is a stove made by them, as the complainant has to describe its stove as a "Home Radiant" with a "XX Century Fire Pot," provided they do so in a way not likely to deceive a purchaser into believing that he is buying the stove made by the complainant.

Decree dismissing the bill must be affirmed. ·