## COL. W. F. CODY HISTORICAL PICTURE CO. v. COLONIAL AMUSEMENT CO. et al.

(District Court, D. Colorado. November 27, 1922.)

No. 7421.

1. **Trade-marks and trade-names and unfair competition ⬥26—Complainant held not to have exclusive right to use name "Buffalo Bill" in film productions.**

   The production by complainant, a corporation organized by Col. W. F. Cody and others, of a motion picture in which Col. Cody was the principal actor, depicting certain Wild West scenes and Indian battles, which was advertised and became known as the "Buffalo Bill" picture, *held* not to entitle complainant to the exclusive use of the name Buffalo Bill in the name of a motion picture, it appearing that the commercial value of such name, as applied to amusement and theatrical productions, was fully established long before complainant's picture was made, and it not being shown that Col. Cody attempted to convey to complainant any established business or good will or any proprietary right in the name.

2. **Trade-marks and trade-names and unfair competition ⬥68—Essence of "unfair competition" is deception.**

   The essence of unfair competition in business is deception in palming off the goods or products of one as those of another.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

3. **Trade-marks and trade-names and unfair competition ⬥33—Not transferable except with associated business.**

   A common-law trade-mark or trade-name does not by itself constitute property when disassociated from the business that it is supposed to designate or protect, and an attempted assignment of it, except as incidental to some established business or property does not create any exclusive right in the same.

4. **Trade-marks and trade-names and unfair competition ⬥32—Effect of acquiescence in use of name by others.**

   If a name becomes largely known in the trade or business with the assent and acquiescence of its creator, he cannot thereafter assert his right to its exclusive use.

In Equity. Suit by the Col. W. F. Cody (Buffalo Bill) Historical Picture Company against the Colonial Amusement Company and another. On motion for preliminary injunction. Denied.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ernest Morris, of Denver, Colo., for plaintiff.

John A. Rush, of Los Angeles, Cal., and Foster Cline, of Denver, Colo., for defendants.

SYMES, District Judge. This is a motion for a temporary injunction to restrain the defendant from using as part of the name or title of any motion picture the term "Buffalo Bill," either directly or indirectly, or the likeness of Col. William F. Cody, "Buffalo Bill," in advertising any motion picture. In September, 1913, Col. William F. Cody, commonly known as "Buffalo Bill," together with two other parties, organized the plaintiff corporation, pursuant to agreement (Exhibit. X–11), for the purpose of manufacturing commercial motion pictures depicting the life and adventures of "Buffalo Bill," and exploiting by said pictures his name and reputation. Between that date and 1917, the plaintiff produced and exhibited commercially a picture with Col. Cody as the principal actor, depicting certain Wild West scenes and Indian battles.

It is further alleged that the plaintiff thereafter copyrighted said picture under the title of "Adventures of Buffalo Bill," and spent large sums of money in advertising the same throughout the United States, as a result of which the picture came to be generally and peculiarly known as the "Buffalo Bill" motion picture. Col. Cody was an officer of the complainant corporation, and devoted his personal efforts to the production and management of the pictures up to the time of his death in 1917.

The defendant is a producer and exhibitor of motion pictures on a very large scale throughout the United States, and in 1921 photographed or manufactured a moving picture depicting, as it claims, the life and development of the section of America in which Col. Cody made his reputation. It appears that "Buffalo Bill" is only one of the many characters portrayed; other characters being Abraham Lincoln, the members of his cabinet, several prominent military characters of that time, John Wilkes Booth, and the Indian known as "Sitting Bull." Defendant claims its picture is not confined to the exploits of "Buffalo Bill," but portrays various episodes of the Civil War, the assassination of President Lincoln, life of General Grant, and the construction of the Union Pacific Railroad, and what might be called the frontier life of the West from 1861 to 1869. Early in the present year defendant selected as the name for its picture "In the Days of Buffalo Bill," and spent large sums of money in advertising, made many contracts for its exhibition, and was beginning to exhibit the same, when this suit was instituted. It further appears that the complainants put the defendant upon notice of their rights in January, 1922.

The evidence before the court consists of numerous and lengthy affidavits and briefs, and the case has been argued at great length. Counsel are admonished that affidavits should properly contain only recitals of material facts and particulars, and not sweeping conclusions of fact and law. The court is interested in what affiants know about facts; but what their individual opinion of the case is is wholly irrelevant, of no interest, only incumbers the record, and places unnecessary labor on the court in extracting the facts from self-serving arguments.

[1, 2] It is conceded that the only question of law involved is that of unfair competition, which has been defined in the very recent case in this circuit, The Pyle National Co. v. Oliver Electric Manufacturing Co. (C. C. A.) 281 Fed. 632, at page 634, as follows:

"Unfair competition in business consists in palming off the goods or wares of one manufacturer on the public, as purchasers, as and for the goods or wares manufactured and furnished by another. Unfair competition in business, therefore, is based on the idea some deception is practiced by the seller or furnisher of the goods."

Two defenses are set up: First, that the complainant has not shown any right or title to the exclusive use to the name or title "Buffalo Bill"; and, secondly, that the name is of such old, widespread, and established use that it has acquired a secondary meaning, so that an exclusive use to the same cannot now be asserted.

Considering the first point: The complainant's title is based upon Exhibit X–11, a three-party agreement between George K. Spoor, of Chicago, a motion picture expert, as one party, F. G. Bonfils and H. H. Tammen, as another, and Col. Cody as the third, whereby they agree to organize the complainant corporation to produce and exploit motion pictures. After the company was organized as aforesaid they produced a picture now entitled "Adventures of Buffalo Bill," under the personal direction of Col. Cody, and the same was exhibited to some extent throughout the United States, particularly in theaters not devoted exclusively to motion pictures. Col. Cody did not in this contract, or in any other way we are advised of, attempt to assign or sell any established business, good will, or exclusive rights of any nature to his name or the title "Buffalo Bill," or any property right that he may have been able to assign by reason of the previous exploitation of his name and life in connection with amusement enterprises.

The complainant claims it caused its "Buffalo Bill" pictures to be duly copyrighted under the above name, but there is no evidence to support this allegation. On the contrary, that particular title was copyrighted by a stranger to this record, and there is no proof that the name or the material object thereof has been assigned to the complainant. U. S. Comp. Stats. §§ 9562, 9563.

The complainant does not assert that the scenes or matters contained in defendant's picture in any way imitate its picture; their main contention being that they alone are entitled to use in any way the words "Buffalo Bill," as the whole or part of a title for motion pictures.

[3] A common-law trade-mark, or trade-name, does not by itself constitute property, when disassociated with the business that it is supposed to designate or protect, and an attempted assignment of it— except as incidental to some established business or property—does not create any exclusive rights to the same. MacMahan Pharmacal Co. v. Denver Chemical Mfg. Co., 113 Fed. 468, 51 C. C. A. 302; Kidd v. Johnson, 100 U. S. at page 620, 25 L. Ed. 769; United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 Sup. Ct. 48, 63 L. Ed. 141. We are therefore of the opinion that at the time of the organization of the complainant company, and at no time thereafter, did Col. Cody attempt to assign to complainant any established business, or any exclusive

rights or common-law trade-mark that he might have in his name, or the use of the same for amusement purposes.

This brings us to the question of whether or not the complainant acquired a common-law trade-mark to the name or title in question, by reason of the picture it did produce under the supervision and direction of Col. Cody. There is nothing before us to show what its title was. Complainant's later picture—whether the same one we are not advised—entitled "Adventures of Buffalo Bill," had a very limited run, comparatively speaking; if we consider the vast extent of the moving picture business, and the amount of display and exploitation necessary to make a picture successful, and generally known to the theater-going public. The statements in the reports of the complainant company to the secretary of state of Colorado, pursuant to law, and the affidavit of Mr. Spoor, negative the claim that the complainant built or established any very large business for its picture.

The affidavits demonstrate that the name "Buffalo Bill" had been used not only by Col. Cody himself, but by many other persons for various public purposes, including numerous plays, stories of adventure, circuses, and Wild West performances, for many years before the discovery of motion pictures, and thereafter for moving picture purposes before the complainants produced their picture. Many of these productions and books were copyrighted, some as early as 1871, apparently without the license or authority of Col. Cody, and have long since expired.

Col. Cody in his autobiography states that he was first given this title as the result of his success as a buffalo hunter in supplying meat to the construction gangs of the Union Pacific Railroad in 1867. In 1871 a play entitled "Buffalo Bill" was copyrighted by one Fred Maeder, and presented in New York in February, 1872, and enjoyed a successful run. Col. Cody, who at that time had not entered the amusement field, attended the performance, and apparently made no objection. A year later he performed for the first time as an actor in a play entitled "The Scout of the Plains," which seemed to have competed with the original play of "Buffalo Bill" above referred to. He thereafter appeared in other plays depicting the life of the then Wild West, none of them under the name of "Buffalo Bill." It is not claimed that he ever objected to the very extensive use of the title made by numerous playrights, showmen, and authors. Later, and previous to 1913, the "Buffalo Bill and Pawnee Bill Film Company" produced a moving picture entitled "Buffalo Bill" that was advertised and shown to some extent, and trade papers of that time contained advertisements offering to sell state rights thereto.

Further, at the present time, one Col. G. W. Lilley, "Pawnee Bill," the former partner of Col. Cody in the later enterprise, makes claim to the exclusive ownership of the title and names of W. F. Cody, "Buffalo Bill." It appears that the commercial value of the name "Buffalo Bill," as applied to amusement or theatrical productions, was fully established, and widely known, long prior to the production of the complainant's picture. There is no evidence to show that the complainant, through its efforts or expenditures, created or established this

reputation or commercial value of the name of "Buffalo Bill." Further, we are not convinced that the theater-going public in any way associates the name "Buffalo Bill," as applied to motion pictures, with the particular picture produced by the complainant, or that the reputation of the complainant's picture is such that any other production of similar scenes under such a title as complainant is using, would amount to unfair competition within the definition set forth above.

The defendant's advertising matter is not calculated to lead the public to believe that "Buffalo Bill" himself appears in its picture. To illustrate: The complainant might properly entitle its picture "Col. Cody, 'Buffalo Bill,' in the Adventures of Buffalo Bill," as is usual where a particular actor or star is featured. We do not believe that this would prevent the defendant from showing its picture under its title "In the Days of Buffalo Bill," especially where its advertisements state the name of its leading actor, director, and that the defendant is the producer. In discussing the question, the Supreme Court has said in McLean v. Fleming, 96 U. S. 245, at page 255 (24 L. Ed. 828):

"Colorable imitation, which requires careful inspection to distinguish the spurious trade-mark from the genuine, is sufficient to maintain the issue; but a court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other."

See, also, Wrisley Co. v. Iowa Soap Co., 122 Fed. 796, 59 C. C. A. 54.

The authorities clearly established that there is no such thing as property right in a common-law trade-mark, except in connection with an established business, sufficiently well known to the public, so that when a similar article—or, as here, a motion picture—is put upon the market, the public interested at once associates it with the product of the party claiming the common-law trade-mark. United Drug Co., v. Rectanus Co., 248 U. S. 90 at page 97, 39 Sup. Ct. 48, 63 L. Ed. 141; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713; Manners v. Triangle Film Corp., 247 Fed. 301, 159 C. C. A. 395.

[4] The name seems to have acquired what is known as a secondary meaning, so that to the public it is associated as much, if not more, with the particular phase and a period of American life as it is with the personality of Col. Cody. The Supreme Court says, in Saxlehner v. Eisner & Mendelson Co., 179 U. S. 33, 21 Sup. Ct. 7, 45 L. Ed. 60, that if a name becomes largely known in the trade with the assent and acquiescence of its creator, he cannot thereafter assert his right to its exclusive use. If Col. Cody had desired to assert or keep in himself any exclusive use of the name, he should have asserted his rights with reasonable promptness many years ago, and it is too late now for any one to assert the same in his behalf. A name, having been previously appropriated and used for trade purposes, is not subject thereafter to the exclusive appropriation that the law recognizes and protects. Columbia Mill Co. v. Alcorn, 150 U. S. 480, 14 Sup. Ct. 151, 37 L. Ed. 1144.

The complainant, in order to entitle it to the extraordinary remedy asked for, must sustain the burden of proof that without the injunc-

tion it will suffer greater harm than the injury occasioned to the defendant would be, in the event that the injunction was granted; and we do not believe it has done so. The defendant, as far as the proof goes, is amply able to respond in damages, and, in view of the large amount it has expended so far upon its picture, will suffer great loss if restrained.

The motion for a preliminary injunction is, for the reasons stated, denied.