[No. 15092.    Department One.—June 13, 1894.]

## MICHAEL CASTLE ET AL., APPELLANTS, *v.* JOHN C. SIEGFRIED ET AL., RESPONDENTS.

TRADEMARK—TEA; LABELS—RESEMBLANCE NOT CALCULATED TO DECEIVE.
There can be no exclusive right to put up and sell tea in packages of any particular form or size, or to designate the package by any particular arrangement of words which indicate no more than the name, or amount or quality of the tea, or the place where it is produced or sold; and where it appears that a cross in the shape of the letter X was in common use amongst tea importers, and that persons wishing to buy tea were governed by the initials placed within such cross, or by the name of the importers stamped upon the package, and that the different colored letters on the labels had no significance with those purchasing tea, and that no person had been, or was likely to be, deceived by any resemblance between the packages of tea sold by the defendants and those sold by the plaintiffs, a judgment rendered in favor of the defendants dismissing a complaint for infringement of the plaintiffs' trademark will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Galpin & Zeigler*, for Appellants.

*Mastick, Belcher & Mastick*, for Respondents.

HARRISON, J.—Action for the infringement of a trademark.

The plaintiffs, a mercantile house in San Francisco, under the name of Macondray & Co., have been for many years engaged in importing teas from Japan, which are put up for them in that country in pound and half-pound packages, on each of which is affixed a label, the lines of which are printed in different colors, designating them as the importers, and containing also a characteristic mark or brand, as follows:

the whole surrounded with a gold border. The defendants are also importers of teas into San Francisco from Japan, and have for many years imported teas put up in pound and half-pound packages, marked with labels containing an X-shaped character similar to that used by the plaintiffs, but with different initial letters in the angles thereof. The plaintiffs brought this action, alleging that the acts of the defendants are an infringement of their right to a trademark, and praying that they be enjoined from its further use. The court below held that the marks used by the defendants do not infringe upon any trademark of the plaintiffs, and are not a colorable or any imitation of any trademark of the plaintiffs, and rendered judgment in favor of the defendants, dismissing the complaint. The plaintiffs moved for a new trial, upon the ground that the decision of the court was not sustained by the evidence. This motion was denied, and the plaintiffs have appealed.

A trademark may be appropriated by any one dealing in an article of commerce " to designate the origin and ownership thereof," but such dealer cannot exclusively appropriate, any designation, or part of a designation, which relates only to the name, quality, or description of the thing or business, or place where the thing is produced or the business is carried on. (Civ.

Code, sec. 991). There is a marked distinction between the appropriation by an individual of some mark or symbol, coined or invented by him to designate an article or proprietary compound which he manufactures, and his appropriation of a mark to designate an article of commerce dealt in by him in common with others. There can be no exclusive right to put up or sell tea in packages of any particular form or size, or to designate the packages by any particular arrangement of words, which indicate no more than the name, or amount, or quality of the tea, or the place where it is produced or sold.

The plaintiffs did not give any evidence in the court below tending to show that they had invented or devised the trademark called by the witness the saw-buck or crossbar mark or brand, but merely that they had made use of it with their initials in the angles for many years; nor did they show that they were the first who had made use of this brand as a distinguishing mark for their goods; and there was evidence before the court that this mark had been used by dealers in tea long anterior to the time when the plaintiffs claim to have first made use of it, and that it had been used in San Francisco as a brand or mark upon packages of tea for upwards of twenty years by other persons, who were dealing in tea in San Francisco and on the Pacific Slope.

The court finds that the only parts of the labels which were invented or designed or solely used by the firm of Macondray & Co. are the combination of the X-shaped character with the letters " M. M. & Co.," and the name "Macondray & Co." This is, indeed, all of the label that could be appropriated by the plaintiffs as a trademark, and is what is claimed by them in the complaint to be their trademark, and to which the evidence at the trial was directed.

It was also shown that the packages in which both the plaintiffs and the defendants, as well as other importers, are accustomed to have the tea imported are of the shape

and size in which it is usually put up and sold; that the paper in which it is wrapped is manufactured in Japan, and that the labels thereon are printed there; that these labels are in the usual form of type used upon tea labels, and are printed in alternating colors, such as are commonly used in that country, and are surrounded with a gold border; that the only distinguishing mark of the several importers is their own name printed upon the label, or their initials in the angles of the X.   It was also shown, and the court found, that the defendants had sold to dealers tea put up in packages marked with labels containing the names of such dealers, instead of the names of the plaintiffs, and having their initials in the angles of the X, instead of the initials "M. M. & Co.," and having also the same descriptive names of the tea; that the size and shape of the packages and the labels thereon were similar to those on the packages of tea sold by the plaintiffs, and were of the form and character in common and general use in the tea trade, and used by most importers and dealers in tea; that all of these teas were so packed and marked at the direction of the dealers to whom they were sold, and the initial letters placed in the angles of the X were in each case the initials of the name or firm name of such dealer.   The teas thus put up and sold by the defendants were of a quality equal, if not superior, to those put up and sold by the plaintiffs, and the court finds that the defendants acted in good faith, and were free from any fraudulent intent in their dealings in the teas.

It was also shown that persons wishing to buy tea were governed by the initials within the X, or by the name of the importer stamped upon the packages, and that the different colored letters on the labels had no significance with those purchasing teas; and the court found that no person had been, or was likely to be, deceived by any resemblance between the packages of tea sold by the defendants and those sold by the plaintiffs.

We are of the opinion that the evidence fully sustains the findings of the court, and that its judgment is correct.

The judgment and order appealed from are affirmed.

GAROUTTE, J., and McFARLAND, J., concurred.