## REYMER & BROS., Inc., v. HUYLER'S.

(Circuit Court, W. D. Pennsylvania. July 3, 1911.)

No. 51.

TRADE-MARKS AND TRADE-NAMES (§ 59\*)—INFRINGEMENT.

The word "Metropolitan," when used by a manufacturer on pound and half-pound boxes of chocolates and bonbons, is an arbitrary and fanciful word, not indicative of ingredients, quality, or amounts, and constitutes a valid trade-mark, which is infringed by its use by another, in connection with other words, giving the packages a similar appearance on choc-

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

olate cakes sold at candy stores in the same city and vicinity, where it has become identified by long use with the goods of the first user.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*

Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth v. Warner, 50 C. C. A. 323.]

In Equity. Suit by Reymer & Bros., Incorporated, against Huyler's. On motion for preliminary injunction. Motion granted.

James Negley Cooke, James L. Wehn, Leander Trautman, Frank F. Reed, and Edward S. Rogers, for complainant.

Bakewell & Byrnes, George H. Parmelee, and Ely, Agar & Fulton, for respondent.

YOUNG, District Judge. This is a trade-mark case, and not a case of unfair competition. Most of the affidavits in the case, which is a suit to enjoin the infringement of a trade-mark, and the arguments of counsel are altogether irrelevant, because they are more applicable to a case of unfair competition than to one of infringement of a trade-mark. The principle governing courts in such cases has been clearly formulated by Judge Acheson in the case of Codillot v. American Grocery Co. (C. C.) 71 Fed. 873, where it is said:

"Courts of equity interfere by injunction to protect trade-marks, upon the ground that the plaintiff has a valuable interest in the good will of his trade, and that a rival merchant or manufacturer shall not be permitted, by the use of the plaintiff's symbol, to palm off his own goods to purchasers as those of the plaintiff. McLean v. Fleming, 96 U. S. 245 [24 L. Ed. 828]. To entitle a plaintiff to an injunction, it is not necessary that a specific trade-mark has been infringed; for, irrespective of a technical question of trade-mark, a defendant has no right, by imitative devices, to deceive purchasers, and thus induce them to believe that they are buying the goods of the plaintiff. Id.; Coates v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966 [37 L. Ed. 847]. As to the degree of similarity necessary as a ground for an injunction, no precise rule, applicable to all cases, can be formulated; but the decisions agree that it is enough if the resemblance is so close that purchasers exercising ordinary caution are likely to be misled. In McLean v. Fleming, supra, the court (citing Gorham Co. v. White, 14 Wall. 511 [20 L. Ed. 731]) said: 'Two trade-marks are substantially the same, in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser, giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one, supposing it to be the other.' The resemblance need not be such as would deceive persons who would see the two marks placed side by side. Seixo v. Provezende, 1 Ch. App. 192, 195. 'Similarity, not identity,' said Judge Bradley, in Celluloid Manufg. Co. v. Cellonite Manufg. Co. [C. C.] 32 Fed. 94, 97, 'is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary, unsuspecting customer is obnoxious to the law.'"

These principles are still further defined and applied, in their application to the two classes of cases of unfair competition and infringement of trade-marks, by Judge Baker in Church & Dwight Co. v. Russ (C. C.) 99 Fed. 276, 278:

"The tendency of the courts at the present time seems to be to restrict the scope of the law applicable to technical trade-marks, and to extend its scope

in cases of unfair competition. Mill Co. v. Alcorn, 150 U. S. 460 [14 Sup. Ct. 151, 37 L. Ed. 1144]; Laughman's Appeal, 128 Pa. 1 [18 Atl. 415, 5 L. R. A. 599]; Koehler v. Sanders, 122 N. Y. 65 [25 N. E. 235, 9 L. R. A. 576]; Castle v. Siegfried, 103 Cal. 71 [37 Pac. 210]; Fleischmann v. Starkey [C. C.] 25 Fed. 127. As this case falls more appropriately under the head of an infringement of a technical trade-mark, rather than under the head of unfair competition, it becomes desirable to ascertain as nearly as may be the distinctions, as well as the points of resemblance, between them. The underlying principle of each is the same, namely, the prevention of that which in its operation and results, and usually in intention, is a fraud upon the public, and an injury to the rival trader. That this is the underlying principle is clearly shown in the leading case on technical trade-mark law (Canal Co. v. Clark, 13 Wall. 311, 322 [20 L. Ed. 581]) where the Supreme Court say: "This will be manifest when it is considered that, in all cases where rights to the exclusive use of the trade-mark are invaded, it is invariably held that the essence of the wrong consists in the sale of the goods of one manufacturer or vendor as those of another, and that it is only when this false representation is directly or indirectly made that the party who appeals to a court of equity can have relief. This is the doctrine of all the cases.' But, while the idea of fraud or imposition lies at the foundation of the law of technical trade-marks, as well as the law of unfair competition, it must be borne in mind that fraud may rest in actual intent shown by the evidence, or may be inferred from the circumstances, or may be conclusively presumed from the act itself. In the case of unfair competition the fraudulent intent must be shown by the evidence, or be inferable from the circumstances, while, in the case of the use by one trader of the trade-mark or trade symbol of a rival trader, fraud will be presumed from its wrongful use. It is commonly said that there is a right of property in a technical trade-mark, and an infringement of it is spoken of as a violation of a property right."

Regarding this property right, it was said by Mr. Justice Miller in Trade-Mark Cases, 100 U. S. 82, 92, 25 L. Ed. 550:

"The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the chancery courts of England and of this country, and by the statutes of some of the states. It is a property right for the violation of which damages may be recovered in an action at law, and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement. This exclusive right was not created by the act of Congress, and does not now depend upon it for its enforcement. The whole system of trade-mark property and the civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage."

In Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, it is said:

"These cases establish the following general propositions: (1) That to acquire the right to the exclusive use of a name, device, or symbols, as a trademark, it must appear that it was adopted for the purpose of identifying the origin or ownership of the article to which it is attached, or that such trademark must point distinctively, either by itself or by association, to the origin, manufacture, or ownership of the article on which it is stamped. It must be designed, as its primary object and purpose, to indicate the owner or producer of the commodity, and to distinguish it from like articles manufactured by others. (2) That if the device, mark, or symbol was adopted or placed upon the article for the purpose of identifying its class, grade, style, or quality, or for any purpose other than a reference to or indication of its ownership, it cannot be sustained as a valid trade-mark. (3) That the exclusive right to the use of a mark or device claimed as a trade-mark is founded upon priority of appropriation; that is to say, the claimant of the trade-mark must have been the first to use or employ the same on like ar-

ticles of production. (4) Such trade-mark cannot consist of words in common use as designating locality, section, or region of country."

Controlled, then, by the foregoing considerations, let us first see what the established facts of this case are. It appears from the evidence in this case that Reymer & Bros. have been for the past 65 years engaged in the manufacture and sale of candy and confectionery, first and until 1901 as a copartnership, and since that time as a corporation. In 1897 they adopted as a trade-mark the word "Metropolitan," which they used upon one pound and one-half pound boxes of chocolate creams, mixtures of chocolate creams, and other candies called "bonbons." There was also printed upon the boxes, in addition to the work "Metropolitan," the words, "Reymers," "Pittsburgh," "Assorted," or "Chocolates." It appears by the evidence that these packages, so marked, have been sold and supplied by the complainant to the wholesale and retail establishments in the district surrounding Pittsburgh to the extent of 60,000 packages in the last 2½ years, and 150,000 since 1897, and that complainant's "Metropolitan" chocolates are well known and are bought and sold and asked for and identified by purchasers and the public by the word "Metropolitan." It also appears that the word "Metropolitan" has become so associated with the product of complainant as to indicate to purchasers and the public its origin and manufacture. In its present application it is an arbitrary and fanciful word, and, printed upon a box of candy, does not in any way describe any ingredient or quality of the candy, or amounts, or indicate the place of manufacture, or the person who manufactures it.

The respondent in the spring of 1910 began the use of the word "Metropolitan" as a trade-mark for sweetened cakes of chocolate, and these were put up in wrappers and also in small boxes, with a picture of the tower of the Metropolitan Life Building, Madison Square, N. Y. These boxes were sold at the small price of five and ten cents. The evidence also clearly shows that, although confusion may arise by the alleged expert and technical definition as to the meaning of the word "chocolate" and the meaning of the word "candy" given by deponents on both sides, chocolate mixed with sugar and other substances is sold at candy stores, confectioneries, and other places where candy is sold and purchased indiscriminately by those who wish to eat it in the form in which it is sold.

It appears upon comparison of complainant's boxes with the packages of respondent that the marks are very similar. On the complainant's, the word "Reymers," "Pittsburgh," "Metropolitan," "Chocolates"; on the respondent's, on its boxes, "Huylers," "Metropolitan," "Chocolate"; and on its cake packages, "Huylers," "Metropolitan," "Sweet Chocolate."

Measured, then, by the principles above laid down, it is established in this case that the complainant has a property right in the trademark "Metropolitan"; that it was adopted for the purpose of identifying the origin and ownership of certain candies manufactured and sold as chocolate creams, mixed chocolate creams, and bonbons by complainant; that it was used to distinguish such candies from like articles manufactured by others, and that this device or mark, "Metro-

politan," was not adopted and placed upon the above-mentioned candies for the purpose of identifying their class or quality; that the complainant was the first to use this trade-mark on like articles of production; and that the word "Metropolitan" is an arbitrary and fanciful term, and does not designate locality, section, or region of country.

The complainant's trade-mark, then, being a valid trade-mark, and one to the exclusive use of which, as used by complainant, it is entitled, it only remains to determine whether or not respondents have infringed.

It clearly appears, by a comparison of the packages used by complainant and respondents, that the words "Metropolitan," "Chocolate," or "Chocolates" are conspicuously presented. The different shape of the packages is not likely to be observed by the ordinary purchaser because the class of goods being dealt in, candies and chocolates, are placed in many different kinds of packages by the same manufacturer. The ordinary purchaser, having in mind chocolate which is ready for consumption and "Metropolitan" as descriptive of Reymers' chocolate, is unlikely to look further than for the two words. These he finds on both packages. As said in Celluloid Manufg. Co. v. Cellonite Manufg. Co., supra:

"Similarity, not identity, is the usual recourse when one party seeks to benefit himself by the good name of another."

So we have here, not identity, but similarity, and, as was said in the same case:

"What similarity is necessary to effect the object has to be determined in each case by its own circumstances."

Taking, then, this similarity—this resemblance—and keeping in mind the other circumstances of the case as shown by the evidence, the location by defendant of its store in one formerly occupied by complainant in its retail cigar business, the keeping of its cakes of "Metropolitan" sweet chocolate on the counter with other candies and with small packages of candy, the beginning of the use by it of the trade-mark in the same city with complainant, after being engaged in business there for about one year, and where complainant's use of the trade-mark was well known and largely advertised, we must conclude that, not only does the use of complainant's symbols by respondent result in the palming off of respondent's own goods to purchasers as the goods of complainant, but by its imitating the trade-mark of complainant the respondent has deceived purchasers and induced them to believe they have been buying the goods of complainant, and thus has violated the property right of complainant in its trade-mark. Even were there no evidence of fraudulent intent in the case, it being one where a trade-mark is infringed, fraud may be presumed from its use.

We are therefore satisfied that the respondents have infringed the complainant's trade-mark, and should be restrained from the further use of the same upon articles of its production like those of complainant.

Let an order be drawn accordingly.