JOSEPH SCHLITZ BREWING CO. v. HOUSTON ICE & BREWING CO. et al.

(Circuit Court of Appeals, Fifth Circuit.   April 28, 1917.)

No. 2990.

1. TRADE-MARKS AND TRADE-NAMES ☞60—INFRINGEMENT—COLOR OF LABEL.
    Where the differences between plaintiff's and defendants' labels were so marked in other respects that, in the absence of identity of color, there could be no possibility of confusion, and plaintiff did not, in any of its trade-marks, reserve the right to appropriate any specific color, there could be no infringement.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 73, 74.]

2. TRADE-MARKS AND TRADE-NAMES ☞70(4)—UNFAIR COMPETITION—IMITATION.
    For defendants to offer for sale their bottled beer in competition with that of plaintiff, in a dress likely to deceive the purchaser into believing he was receiving plaintiff's product, would constitute unfair competition, justifying relief, though there was no infringement of plaintiff's technical trade-marks.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

3. TRADE-MARKS AND TRADE-NAMES ☞1—NATURE OF RIGHT.
    The basis of trade-mark rights is the good will of a business, which the mark serves to identify to the purchasing public, and apart from such good will a trade-mark has no recognized value, and is not the subject of legal appropriation.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 1, 3.]

4. TRADE-MARKS AND TRADE-NAMES ☞66—INFRINGEMENT—INJURY TO BUSINESS.
    To constitute a violation of trade-mark rights, injury to the good will of the owner's business must appear.

5. TRADE-MARKS AND TRADE-NAMES ☞67—INFRINGEMENT—INJURY TO BUSINESS.
    The purpose of the law in the protection of trade-mark rights is to conserve the good will of the owner's business, rather than to protect the purchasing public against imposition.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 78.]

6. TRADE-MARKS AND TRADE-NAMES ☞70(4)—UNFAIR COMPETITION—IMITATION.
    Though purchasers of bottled beer might be deceived as to its maker by the color of the bottle, or such color in connection with the color of the label, where all breweries had a right to adopt and use bottles and labels of that color, the resemblance in color between plaintiff's and defendants' beer afforded no ground of relief, as the resemblance justifying relief must be in matters which the complaining party has the right to use exclusively.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

7. TRADE-MARKS AND TRADE-NAMES ☞70(4)—UNFAIR COMPETITION—IMITATION.
    The resemblance between plaintiff's and defendants' bottled beer, which would justify relief as against unfair competition, must be such as

would deceive an ordinary purchaser, buying in the manner in which purchasers usually buy similar goods, and no distinction is to be made in this respect with regard to the illiterate and unwary.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

8. TRADE-MARKS AND TRADE-NAMES ☞70(4)—UNFAIR COMPETITION—IMITATION.

Plaintiff and defendants both sold beer in brown bottles with brown labels, but plaintiff claimed no exclusive right to the color of the bottle or label. The label of each had white lettering and white marginal lines on the brown background, and a blue circle with white lettering in it, but the shape of the label and the character of the script were different, as were also the contents of the blue circle; plaintiff's being a globe, and defendants' a red star with a magnolia blossom and leaves in the center. There was an entire dissimilarity in the inscriptions; each label showing the respective name of the maker and the distinctive brand of beer. Held that, eliminating the color of the bottles and label, there was no such similarity as justified relief.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81.]

9. TRADE-MARKS AND TRADE-NAMES ☞68—UNFAIR COMPETITION—MISREPRESENTATIONS.

Occasional misrepresentation of soliciting agents of defendant, not known to or authorized by defendant, afforded no ground of relief on a claim of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79.]

10. TRADE-MARKS AND TRADE-NAMES ☞96—DECREE—CONCLUSIVENESS.

Where, in a suit for unfair competition in connection with the sale of bottled beer, plaintiff claimed that misrepresentations were made by defendants' agents, but the court dismissed the bill, because not satisfied that the representations were made, or, if made, that they were authorized or known to defendants, the decree would not bar relief against subsequent misrepresentations, continuing to such an extent and over such a period of time as to show that they were authorized.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 109.]

Appeal from the District Court of the United States for the Southern District of Texas; Waller T. Burns, Judge.

Suit by the Joseph Schlitz Brewing Company against the Houston Ice & Brewing Company and others. From a decree dismissing the bill, plaintiff appeals. Affirmed.

John W. McMillan and Theodore Kronshage, both of Milwaukee, Wis., for appellant.

Jesse Andrews and Walter H. Walne, both of Houston, Tex., for appellees.

Before PARDEE and WALKER, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is an appeal from a decree of the District Court for the Southern District of Texas, dismissing plaintiff's bill of complaint after final hearing upon the merits. The purpose of the bill was to restrain the Houston Ice & Brewing Company, a

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

dissolved corporation, and certain individuals, who were operating its business as statutory trustees, from selling their bottled beer with such labels and in such dress as would induce the purchasers of it to believe that they were buying plaintiff's product, instead of that of defendants. The basis of the plaintiff's cause of action is: (1) An alleged infringement of its several trade-marks; and (2) unfair competition. The plaintiff's brewery and shipping point is in Milwaukee, and that of the defendant in Houston, Tex. Both plaintiff and defendant were engaged in selling bottled beer throughout the state of Texas, and were in direct competition with each other. The plaintiff had for 20 years or more distributed its bottled beer in brown bottles with a brown label. The defendant originally employed only white bottles with white labels, but for several years had used also the brown bottles and in connection with them brown labels. The evidence tended to show that brown bottles were more protective to the beer, and that brown labels were more appropriate when used on brown bottles than were white labels. The defendants had at one time been the distributing agents for the plaintiff's bottled beer in the state of Texas, but had ceased to be connected with plaintiff for some time before the suit was filed. The plaintiff contended that defendants' use of brown bottles with brown labels first commenced after the relations between plaintiff and defendants were severed; but this was disputed by the defendants. There was evidence as to cases of confusion of brands between those of plaintiff and those of defendants, and evidence tending to show intentional deception on the part of soliciting agents of the defendants in the sale of their product; but the defendants denied authorization of any deception by their agents. The plaintiff did not rely upon the use by defendants of brown bottles; the evidence showing that it was plaintiff's custom to sell its bottles to other brewers for re-use and to be refilled in the state of Texas. The alleged infringement and unfair competition was based on the use by defendants of a label on its bottles, claimed to have resembled plaintiff's label so closely as to mislead purchasers into the belief that they were buying plaintiff's product, when they were in fact buying that of the defendants.

[1] It is quite clear that there was no infringement by defendants of any one of the plaintiff's registered trade-marks. No one of these trade-marks claims any color scheme as part of the mark. The differences between plaintiff's labels and those of the defendants are so marked in other respects that, in the absence of identity of color, there could be no possibility of confusion between them; and, the right to appropriate any specific color not having been reserved in any of the trade-marks, no infringement of them is made out by the plaintiff.

[2] This leaves for consideration the question as to whether the defendants were guilty of unfair competition in offering for sale their bottled beer, in competition with that of the plaintiff, in a dress that would likely deceive the purchaser into believing he was receiving the plaintiff's product. This would constitute unfair competition and justify relief, though the plaintiff failed to establish an infringement of its technical trade-marks. The dress of defendants' bottled beer, which gives rise to the complaint of the plaintiff, consisted in its hav-

ing been put up in brown bottles with a brown label, charged to have been imitative of that of the plaintiff. The plaintiff does not contend that, either by virtue of its registered trade-marks or by virtue of continued user, it has acquired the exclusive right to use either brown bottles or brown labels in bottling its beer. It disclaims any right to a monopoly in the color brown, in and of itself, as applied either to the containers or labels. Its exact contention is that the dress of its bottled product in brown bottles with brown labels, in combination with certain other elements in the label peculiar to it, is entitled to protection, and that defendants by their use of a brown bottle with a brown label, with certain imitative characteristics, has violated its rights. The question, therefore, is whether the two labels are so alike, in respects other than their own color and that of the containers, as to make it likely that, because of such other points of resemblance, the product of the defendants might be mistaken by purchasers for that of the plaintiff in the ordinary course of retailing beer. The determinative facts are, therefore, the points of resemblance and dissimilarity, in respects other than their general color, of the two labels, and their probable effect upon consuming purchasers of the beer.

[3-6] Before referring to the details of resemblance or lack of it, reference to a few pertinent legal principles will not be out of place. It is well settled that the basis of trade-mark rights is the good will of a business, which the mark serves to identify to the purchasing public. Apart from such good will, a trade-mark has no recognized value and is not the subject of legal appropriation. Hanover Milling Co. v. Metcalf, 240 U. S. 403–414, 36 Sup. Ct. 357, 60 L. Ed. 713. To constitute a violation of trade-mark rights, injury to the good will of the owner's business must appear. The purpose of the law in the protection of trade-mark rights is to conserve the good will of the owner's business, indicated by the use of the mark, rather than to protect the purchasing public against the imposition of buying goods believed to be of an origin different from their actual origin. Borden Ice Cream Co. v. Borden's Condensed Milk Co., 201 Fed. 510, 121 C. C. A. 200; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 36 Sup. Ct. 357, 60 L. Ed. 713. Protection of the owner's property right in the established good will of his business from piracy by the use by others of a mark, which the owner has adopted to represent his product, is the aim of the law and the measure of the rights and obligations arising from it. If the result of the use of the mark by one other than the owner is to enable him to palm off his goods upon buyers as those of the owner, his competitor, an injury to the good will of the business of the owner of the mark results, which the law redresses. The purpose being to protect the owner of the mark rather than the purchasing public, it would seem unimportant whether or not the purchaser used ordinary care to determine the true ownership. If the resemblance was such that even unwary purchasers would likely be misled, injury would result to the owner of the trade-mark. The test would seem to be whether the resemblance was such as would likely deceive purchasers of the capacity and under the conditions that the goods would encounter in the course of business of the particular trade. While the owner of the mark is

not chargeable with the want of care of the purchasers of his goods, if he is injured by their being deceived by his competitor's mark, yet it is clear that not every deception of customers can be said to be the result of trade-mark infringement or unfair competition in the use of similar marks or dress for goods.

It is conceivable that purchasers of bottled beer might be misled as to the maker of the beer by the color of the bottle, in the absence of any label on it. It is probable that purchasers of bottled beer are frequently deceived as to its maker by the color of the bottle, together with the color of the label. A brown bottle with a brown label indicates to many the beer of the plaintiff. If they examined no further than the color of the bottle and the color of the label, the deception as to the origin of the beer would be complete, and yet the plaintiff's counsel concedes that neither the brown bottle, nor the brown label, nor both in combination, apart from other points of resemblance, would establish infringement or unfair competition. All breweries having the right to adopt the use of brown bottles with brown labels, no legal injury can result to any brewer from a deception caused by the use of brown bottles with brown labels alone. The points of resemblance, to justify relief, must be in matters which the complaining party has the right to use exclusively. This principle applies to unfair competition as well as to infringement. In the case of Coats v. Merrick Thread Co., 149 U. S. 562–573, 13 Sup. Ct. 966, 970 (37 L. Ed. 847) the Supreme Court said:

"There is no doubt a general resemblance between the heads of all spools containing a black and gold label, which might induce a careless purchaser to accept one for the other. Defendants, however, were not bound to any such degree of care as would prevent this. Having, as we have already held, the right to use the black and gold label, and the periphery embossed with the number of the thread, they were only bound to take such care as the use of such devices, and the limited space in which they were used, would allow. In short, they could do little more than place their own name conspicuously upon the label, to rearrange the number by placing it in the border, instead of the center, of the label, and to omit loops of the plaintiffs' periphery, and substitute their own star between the numerals. Having done this, we think they are relieved from further responsibility. If the purchaser of such thread desires a particular make, he should either call for such, in which case the dealer, if he put off on him a different make, would be guilty of fraud, for which the defendants would not be responsible, or should examine himself the lettering upon the spools. He is chargeable with knowledge of the fact that any manufacturer of six-cord thread has a right to use a black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer. * * * Having already held that defendants had a right to make use of the embossed numeral in the periphery, their union of the two devices upon the same spool head, both being originally designed to be used in conjunction, cannot be made the basis of a suit."

In the case of N. E. Awl Co. v. Marlborough Co., 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377, Justice Holmes said for the court:

"The ground of the ruling probably was that the plaintiff did not claim a trade-mark in boxes or labels, and that its objection to the defendant's boxes was solely because the label was of the same color as the plaintiff's. Of course a person cannot claim the monopoly of a color in connection with a particular line of trade, and very likely not in connection with the labels of a certain kind of goods generally. But the most universal element may be ap-

propriated as the specific mark of a plaintiff's goods, if it is used and claimed only in connection with a sufficiently complex combination of other things. The plaintiff did not claim the exclusive right to brown labels for awls, but it claimed the exclusive use of the brown color in the combination which we have described. If the only other element besides the color had been a box of a certain size and a label of a certain shape, the case might be different. Morgan's Sons Co. v. Troxell, 89 N. Y. 292, 42 Am. Rep. 294. But when there is added an inscription, which both in its pictorial aspect of black marks and in its meaning was calculated to confuse, if not to deceive, the plaintiff's claim seems to us moderate."

In the case of Continental Tobacco Co. v. Larus Bro. Co., 133 Fed. 727, 66 C. C. A. 557, the court said:

"From an inspection of the exhibits, in connection with the weight of evidence, we think it clearly appears that the matters in which the defendant's plug of tobacco is similar to complainant's—that is to say, the size and shape of the plug, the indented marking to assist in cutting off the smaller piece, the use of the 'indented name of the manufacturer, the use of a yellow tag lettered with the name of the brand—are in common use, and in the present case the manufacturers' names are easily read, and are so dissimilar that there appears to us no ground for the contention that there is an unfair imitation likely to deceive.

"As to actual deception, the proof is not at all convincing; the most that is established is that the plugs look alike, and, if the illiterate and inattentive purchaser was guided by the color and size of the circular tag alone, he might mistake one for the other, but that is quite true of almost all forms of manufactured tobacco. The answer of the defendant, sworn to by the originator of the 'Richmond Best Navy' brand, swears that there was never any purpose or intention to imitate the complainant's 'Master Workman' brand, or to attempt in any way to appropriate the trade of the complainant by creating any confusion as to their respective brands.

"It is urged that the illiterate persons, such as those who mostly use this kind of smoking tobacco, look only at the color and size of the tag; but this is not good ground for relief, for we find from the proofs that the color and size of the yellow circular tags is not of itself a distinction which either manufacturer can appropriate."

In the case of Payton v. Snelling, 17 R. P. C. 48, 52, quoted approvingly in United States Tobacco Co. v. McGreenery (C. C.) 144 Fed. 531, 532, the court said:

"He [the plaintiff] must make out, not that the defendant's are like his by reason of those features, which are common to them and other people, but he must make out that the defendant's are like his by reason of something peculiar to him, and by reason of the defendant having adopted some mark, or device, or label, or something of that kind, which distinguishes the plaintiff's from other goods, which have, like his, the features common to the trade. Unless the plaintiff can bring his case up to that, he fails. The evidence is very strong that one tin may be mistaken for the other, very likely; but why? Because of the features common to them and common to all. The only question you have then to consider is whether the defendants' get-up is so like the plaintiffs' as to be calculated to be mistaken for it. But when, as in this case, and in the last, what is called the plaintiffs' get-up consists of two totally different things combined, namely, a get-up common to the trade, and a distinctive feature affixed or added to the common features, then what you have to consider is not whether the defendants' get-up is like the plaintiffs' as regards the common features, but whether that which specially distinguishes the plaintiffs' has been taken by the defendants."

In the case of American Tobacco Co. v. Globe Tobacco Co. (C. C.) 193 Fed. 1015, the court said:

"There are some resemblances in the packages, but most of them arise 'from features which have been combined in common use and to which no one has exclusive right.' That any one is deceived by the size, shape, tin foil, or general makeup of the package, or by its paper, lettering, or color, does not help the complainant's case. All these are old separately and in combination. The complainant must show deception arising from some features of its own not common to the public."

[7] These citations sustain these propositions: (1) That the resemblances relied upon by plaintiff must be in points not common to the trade, but in things it had the exclusive right to use, and hence the color of the bottle and the color of the label are to be eliminated; and (2) that the resemblances in other points, which admit of exclusive appropriation by plaintiff, must be such as would deceive an ordinary purchaser, buying in the manner in which purchasers usually buy similar goods, and that no distinction is to be made in this respect with regard to the illiterate and unwary.

[8] Applying these principles to the labels used by the respective parties: Whether Exhibit C to the bill of complaint is an infringement of Exhibit A becomes unimportant, in view of the concession in argument by counsel that the two labels, on which the court's determination was sought, were Exhibit A, plaintiff's label, and Exhibit J, that last adopted by the defendants, and used by them at the time of the hearing in the District Court. The latter does not carry the resemblance in the initial capital letter "S" to that of the same letter on plaintiff's label that appeared in the former. The points of resemblance between Exhibit A and Exhibit J are the white lettering and white marginal lines on the brown background and the blue circle with white lettering in it. The points of dissimilarity are: (1) The shape of the label, plaintiff's being rhomboidal, defendants' rectangular; (2) the character of the script; (3) the contents of the blue circle, plaintiff's being a globe, defendants' a red star having in its center a magnolia blossom and leaves; and (4) the inscriptions, there being an entire dissimilarity in this respect, each label showing the respective name of the maker and the distinctive brand of beer.

Eliminating the color of the bottles and the color of the label, as elements of confusion, it seems clear that no one could be misled by the other resemblances between the two labels, since a close enough inspection to reveal them would also reveal the more glaring points of dissimilarity mentioned, and to a literate person the difference in the origin of the product, disclosed by the different inscriptions on the two labels. Even an illiterate person could hardly fail to distinguish the differing shape of the labels and the differing character of the script and of the circular inner labels, if they examined them with the slightest attention. We are not to be considered as holding, however, that defendants were under a duty to make their label so different from plaintiff's label that an illiterate person, or one who was so unwary as to be misled by the mere brown color of the bottle and label, would be better informed from the contents of the label, upon so casual an inspection of it. A majority of the court are of the opinion that, eliminating the elements that were common to the trade, namely, the brown bottle and the brown label, there was enough dissimilarity in other respects between the two

labels to justify defendants' use of their label without the imputation of unfair competition.

[9, 10] There is evidence in the record that agents of the defendants advised purchasers of defendants' bottled beer in brown bottles with brown labels that it might be sold as plaintiff's beer to their customers. The defendants deny any knowledge of any such representations by their agents, and deny that any authority was given their agents to make such representations. The District Court found the facts against the plaintiff on this issue, and dismissed the bill, either because not satisfied that the representations were made by the agents, or, if made, that they were authorized by the defendants, or known to them. Occasional misrepresentation of soliciting agents, not shown to have been known to or authorized by defendants, would afford no ground of relief on the ground of unfair competition, apart from an improper dress for their goods. A majority of the court are of the opinion that the finding of the District Court in this respect should not be disturbed. Of course, if misrepresentations by the agents of the defendants should, in the future, continue to such an extent and over such a period of time as to authorize the inference that they were authorized, either expressly or by acquiescence, by the defendants, a question of unfair competition, apart from the use of improper or infringing labels, would arise, the determination of which would not be concluded by the decree in this cause, which in that respect is to be limited in its effect to the conditions existing not later than the date of the decree of the District Court dismissing the bill.

A majority of the court are of the opinion that the decree of the District Court should be affirmed; and it is so ordered.