[Civ. No. 3038.   Second Appellate District, Division Two.—January 10, 1920.]

## SOUTHERN CALIFORNIA FISH COMPANY (a Corporation), Respondent, v. WHITE STAR CANNING COMPANY (a Corporation), Appellant.

[1] TRADEMARKS—USE OF CONTAINER COMMON TO TRADE—DECEPTION OF PUBLIC—UNFAIR COMPETITION.—Where the cans used by both parties to a suit for alleged unfair competition in the packing and sale of canned tuna are of the style put out by can manufacturers and are used by all the tuna-packing companies, the fact that anyone is deceived by the size, shape, and general make-up of the cans does not help the plaintiff's case, since plaintiff must show deception arising from some feature of its own, not common to the public.

[2] ID.—MONOPOLIZATION OF A COLOR.—While sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts, as a rule, a color cannot be monopolized to distinguish a product.

[3] ID.—DIFFERENCE IN LABELS—ABSENCE OF CONFUSION.—Where the difference between plaintiff's and defendant's labels are so marked in other respects that, in the absence of identity of color, there can be no possibility of confusion, a charge of unfair competition falls to the ground.

[4] ID.—DESCRIPTIVE SYMBOL NOT SUBJECT TO APPROPRIATION.—There can be no exclusive appropriation of the figure of a fish for use on labels to be used in connection with the sale of canned tuna. To give the right of exclusive appropriation, the sign or figure must be some arbitrary form or figure, not suggestive of the nature of the article to which it is affixed.

[5] ID.—FALSEHOODS—WHEN PUBLIC PROTECTED.—The law of unfair competition does not protect purchasers against falsehoods which the tradesman may tell; the falsehood must be told by the article itself in order to make the rule of unfair competition applicable.

[6] ID.—DUTY TO PUBLIC AND RIVALS.—One who so names and dresses his product that a purchaser who exercises ordinary care to ascer-

1. What constitute, and what are infringements of, trademarks and trade names, note, 47 Am. Dec. 284.

2. Use of color as infringement of trademark, note, 18 Ann. Cas. 1034.

3. Label as trademark, note, 17 L. R. A. 130.

6. Fraudulent intent as necessary element of unfair competition or infringement of trade name, note, 3 Ann. Cas. 32.

tain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition.

APPEAL from a judgment of the Superior Court of Los Angeles County. Grant Jackson, Judge. Reversed.

The facts are stated in the opinion of the court.

C. F. Holland for Appellant.

Joseph F. Westall for Respondent.

FINLAYSON, P. J.—This is an appeal by defendant from a judgment enjoining it from offering for sale tuna packed in cans similar to those used by plaintiff and encircled with a label such as that which is being used by defendant. The theory of plaintiff is that defendant is guilty of unfair competition in trade, in that its label is an imitation of plaintiff's label, calculated to deceive the purchasing public. A comparison of specimens of the cans and labels used by the parties, and submitted to our inspection, convinces us that there is no such similarity as will sustain a judgment against defendant.

Each party packs in cans and sells to the trade a product designated on the cans as "Tuna Fish." Each puts up its product in cylindrical tin cans, approximately three and three-eighths inches in diameter and two inches in depth, each can being encircled by a paper wrapper, or label, embellished with various decorative designs, of different colors, imprinted upon a dark blue background. Plaintiff's product is known to the trade as "Blue Sea Tuna," and those words, in white bordered with gold, are printed in large type upon its label. Defendant's product is known as "White Star Tuna Fish," and those words, in large white letters bordered with gold, are printed on its label. The cans used by both parties, though of the same size and shape, are such as are commonly used in the trade. Plaintiff's secretary testified that the cans were of the style that the can manufacturers were making, and that he did not know of any tuna company that packed in anything

except a round can similar to that used by both plaintiff and defendant.

Except that both labels have substantially the same blue-colored background, the figure of a fish, designated to represent the "tuna," and truthful, printed descriptions of the contents of the packages, the labels of the two competitors differ in almost every respect.

Though aware that written descriptions of labels and wrappings are almost always unsatisfactory, we shall essay a comparison and description of the two labels, hoping that we shall succeed in showing whatever points of similarity there may be, as well as the dissimilarities. In a general way, the respective labels may be described as follows: At the left end of plaintiff's label—that is, the left end when it is laid out flat, for, of course, it has neither left nor right nor middle when it encircles the can—are the words "Blue Sea" in gilt letters, and printed in such a manner that the letters, which run into each other, represent a rope with several coils; under this, in large gilt letters, is the word "Tuna"; between the words "Blue Sea" and "Tuna" is a representation of the sea, with a small steamer sailing thereon; to the right of the steamer, in white letters, is the word "Brand." At the corresponding end of defendant's label are the words "White Star," in large bold type, and under them, in similar type, the words "Tuna Fish"; between the words "White Star" and the words "Tuna Fish" is a five-pointed star, in white bordered with gold, and printed therein the words "Chicken of the Sea"; to the left of the star is the word "California," and to the right the word "Brand." In the middle of plaintiff's label—when laid out flat—is a figure which, we are informed by appellant's counsel, is intended to represent a sea-serpent holding a trident; under this figure of the sea-serpent on plaintiff's label, printed in dark blue letters and in a space bordered with gilt, are the words "Prepared ready to eat for a delicious salad. Add to this tin of tuna-fish one-quarter cup celery chopped fine, mixed with equal parts salad dressing and cream or condensed milk." On the corresponding part of defendant's label is the word "Tuna," printed in large white letters, edged with gold, and on either side a white five-pointed star, edged with gold, in a gilt circle; under the word "Tuna," and printed in white,

are the words, "When used for salad prepare as you would for chicken meat, fish, crab or other salads, using dressing to suit the taste"; under these words is another five-pointed star. Toward the right end of plaintiff's label—right end when the label is laid out flat—are the words "Blue Sea Tuna" in large bold type; each letter of these words is white with a pronounced gilt edge; under these words there is a representation of the sea, with the figure of a fish, the tuna, in the act of leaping from the water; to the right of this figure are three sea-gulls, winging their flight over the face of the sea; under the figure of the fish plaintiff's corporate name is printed. The corresponding part of defendant's label is as follows: At the top, printed in large white letters edged with gold, are the words "White Star"; under these words, the figure of a fish, the tuna; to the left of the fish, in gilt letters, are the words "Net contents $3\frac{1}{2}$ oz."; under the figure of the fish, in gilt, is the word "California," and under this, in bold letters, white edged with gold, the words "Tuna Fish." At the extreme right end of plaintiff's label—extreme right end when laid out flat—are the words "Prepared from a species of tuna caught in the Pacific Ocean," printed in white. On the corresponding part of defendant's wrapper, printed in white, are the words "Tuna caught in the Pacific Ocean, selected white meat, packed in high grade cotton seed oil and olive oil. Empty contents of can as soon as opened. Packed and guaranteed by White Star Canning Co., Los Angeles, Cal."

On both labels all the words, figures, and letters are printed on a dark blue background. A representation of the sea runs across plaintiff's label, or around the can when the label is pasted upon the container in which the tuna is packed. There is no representation of a sea on defendant's label. Nor is there on defendant's label any figure of a sea-serpent holding a trident, nor anything at all like any such figure. On both labels there is the design or figure of a fish—the tuna. The fish figure on plaintiff's label is not horizontal, but is in the act of rising from the sea or ocean. The corresponding figure on defendant's label is in a horizontal position, and is not shown rising or leaping from the water. Indeed, no water is represented on defendant's label.

That plaintiff's and defendant's cans, with their respective labels or wrappers, bear considerable resemblance to each other, may be admitted. But all of the resemblances arise from features that are common to the trade, or from the use of a design—the figure of a fish—to which no one has an exclusive right.

[1] That anyone is deceived by the size, shape, and general make-up of the cans, or by the prevailing color scheme of the wrappers or labels, does not help plaintiff's case. All these features are old, separately and in combination. As we already have seen, the cans used by both parties are of the style put out by the can manufacturers, and are used by all the tuna-packing companies. Plaintiff's secretary testified that he did "not know of any tuna-packing company packing in anything except a round can similar to this in the exhibit. I do not know of any American packers of fish using any other except the round can with concentric rings on the ends of the can. There are about twelve or fourteen packers of tuna in Southern California using this style of can." Plaintiff must show deception arising from some feature of its own, not common to the public. (*Castle* v. *Siegfried*, 103 Cal. 71, [37 Pac. 210]; *Canal Co.* v. *Clarke*, 13 Wall. 311, [20 L. Ed. 581, see, also, Rose's U. S. Notes]; cited and quoted from in *Dunston* v. *Los Angeles Van etc. Co.*, 165 Cal. 95, [131 Pac. 115]; *Continental Tobacco Co.* v. *Larus etc. Co.*, 133 Fed. 727, [66 C. C. A. 557].) As was said in *Coats* v. *Merrick Thread Co.*, 149 U. S. 562, [37 L. Ed. 847, 13 Sup. Ct. Rep. 966], the purchaser of thread "is chargeable with knowledge of the fact that any manufacturer of six-cord thread has a right to use a black and gold label, and is bound to examine such label with sufficient care to ascertain the name of the manufacturer." "He [plaintiff] must make out, not that the defendant's are like his by reason of those features which are common to them and other people, but he must make out that the defendant's are like his by reason of something peculiar to him, and by reason of the defendant having adopted some mark, or device, or label, or something of that kind, which distinguishes the plaintiff's from other goods which have, like his, the features common to the trade. Unless the plaintiff can bring his case up to that, he fails." (*Payton* v. *Snelling*, 17 R. P. C. 48, 52.)

"The evidence is very strong that one tin may be mistaken for the other, very likely; but why? Because of the features common to them and common to all." (*Payton* v. *Snelling*, 17 R. P. C. 628.)

[2] Nor is plaintiff's case helped by the fact that dark blue, the color of the background, is the predominant color in both labels, though it is apparent that the gravamen of plaintiff's charge lies in an alleged imitative color scheme. It is the one specific feature emphasized by the plaintiff throughout its case. It is true that sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts. (*Fairbanks Co.* v. *Bell Mfg. Co.*, 77 Fed. 869, [23 C. C. A. 554]—a case where, however, there was proof of specific instances of deception.) But as a rule a color cannot be monopolized to distinguish a product. There are not more than seven primary colors, and if one of these may be appropriated as a distinguishing characteristic of a label, it would not take long to appropriate the rest. Thus, by appropriating the colors, the packing of tuna could be monopolized by a few vigilant concerns. [3] To allow colors to be appropriated as distinguishing characteristics would foster monopoly by foreclosing the use by others of any tasty dress; and where the difference between plaintiff's and defendant's labels are so marked in other respects that, in the absence of identity of color, there can be no possibility of confusion, a charge of unfair competition falls to the ground. (*Pacific Coast etc. Milk Co.* v. *Frye & Co.*, 85 Wash. 133, [147 Pac. 865]; *Diamond Match Co.* v. *Saginaw Match Co.*, 142 Fed. 727, [74 C. C. A. 59]; *Schlitz Brewing Co.* v. *Houston Ice & B. Co.*, 241 Fed. 817, [154 C. C. A. 519]; *Heinz* v. *Lutz*, 146 Pa. 592, [23 Atl. 314]; *Morgan's Sons Co.* v. *Troxell*, 89 N. Y. 293, [42 Am. Rep. 294]. See, also, *United States Tobacco Co.* v. *McGreenery*, 144 Fed. 531.) Moreover, in this case the use of blue labels was common to the trade. Plaintiff's secretary, called by it as a witness in its behalf, testifying on cross-examination said that in Southern California there are "about six or eight, maybe ten [tuna packing companies] using the blue label." In *Continental Tobacco Co.* v. *Larus etc. Co., supra,* it was held that where tin tags of all colors, including yellow, and of various sizes, had been used for many years by manufac-

turers of plug tobacco, and a yellow tag similar in appearance to that used by complainant had been in use by others for ten years, the size and color of such tag' was not of itself a distinction sufficient to establish against defendant a case of unfair competition in trade, though defendant ' was using on its plug tobacco a tin tag of the size and color used by the complainant.

[4] Passing from the features that are common to the trade—size and shape of cans, color scheme of labels, etc. —we find that, with but one exception, presently to be noted, the label used by defendant is substantially unlike that used by plaintiff. The exception to which we refer is the figure or design of the fish. But the figure of the fish is a symbol that is indicative of the article sold. And the rule is that there can be no exclusive appropriation of a sign or symbol that represents or is descriptive of the article to which it is attached; that there can be no exclusive appropriation of anything which is merely descriptive of the article, or which indicates the ingredients of the package, or the mode of composition. To give the right of exclusive appropriation, the sign or figure must be some arbitrary form or figure, not suggestive of the nature of the article to which it is affixed. (*Fischer* v. *Blank,* 138 N. Y. 244, [33 N. E. 1040]; *Heide* v. *Wallace & Co.,* 135 Fed. 346, [68 C. C. A. 16]; *Marvel* v. *Pearl,* 133 Fed. 160, [66 C. C. A. 226].) In *Heinz* v. *Lutz, supra,* which was an action based upon alleged unfair competition in trade and not for violation of a technical trademark, and which was brought to enjoin a fruit dealer from using on his packages a label whereon certain fruits were pictured, the supreme court of Pennsylvania used this language: "Both labels are colored, but in every feature except the fruit the colors are widely different. The fruit is, of course, highly colored, to make it look as luscious as possible; but no one trader in this article has, or can have, a monopoly of pears, peaches, cherries, plums, strawberries, etc. Any dealer in fruits has the right to put a picture of these fruits upon· his labels, and to make them as attractive as possible, and the fruit in one label is very likely to resemble that in another." In the instant case, a comparison of the labels used by plaintiff and defendant shows that the only features that possibly can give rise to any similarity

are those that are common to the trade—size and shape of the cans and general similarity of color scheme—and the fish symbol—a design that serves to indicate the nature of the article packed in the cans or containers. In *Payton* v. *Ward*, 17 R. P. C. 58, the court said: "The only question you have then to consider is whether the defendants' get-up is so like the plaintiffs' as to be calculated to be mistaken for it. But when, as in this case and in the last, what is called the plaintiff's get-up consists of two totally different things combined, namely, a get-up common to the trade, and a distinctive feature affixed or added to the common features, then what you have to consider is not whether the defendants' get-up is like the plaintiffs' as regards the common features, but whether that which specifically distinguishes the plaintiffs' has been taken by the defendants." In the case before us, aside from the features that are common to the trade—size and shape of can and general color scheme—that which specifically distinguishes the plaintiff's label and which it may be claimed was taken by defendant —the figure of the fish—is not a subject of exclusive appropriation by either party. Moreover, in the respective figures of the fish, while there no doubt is a general resemblance, there is a marked difference in the position of the fish. And even if there were not this difference in the two fish figures, still it would remain a fact that those parts of plaintiff's label which it is entitled to use exclusively bear no resemblance to anything in defendant's label. The two labels differ in style and device. Plaintiff's product is designated in its label as the "Blue Sea" brand, defendant's is designated as the "White Star" brand; the name of each proprietor is stamped upon its respective label in large and distinct letters; and while purchasers desiring to buy canned tuna, without caring by whom it had been canned, doubtless would accept indifferently either plaintiff's "Blue Sea" brand or defendant's "White Star" brand, yet it is not at all likely that any ordinarily intelligent purchaser, exercising reasonable care, and who desired to buy "Blue Sea" and not "White Star," would be led by any similarity of the respective packages to accept the latter supposing it to be the former.

Plaintiff claims that a side-by-side comparison of the two labels when laid out flat is not a fair test. It is asserted

45 Cal. App.—28

that when the label is pasted on its can, encircling it, the prospective purchaser sees but a small portion of the periphery of each package, and that this tends to and does confuse and deceive the average purchaser. Even so, we doubt if, under the recognized rules already stated by us, plaintiff would be entitled to an injunction. In *Continental Tobacco Co.* v. *Larus etc. Co., supra,* the court said: "It is urged that the illiterate persons, such as those who mostly use this kind of smoking tobacco, look only at the color and size of the tag; but this is not good ground for relief, for we find from the proofs that the color and size of the yellow circular tags is not of itself a distinction which either manufacturer can appropriate." Moreover, according to the testimony of plaintiff's own witnesses—witnesses who had bought from retail grocers cans of tuna with the label or wrapper encircling the can—there is no such similarity as will deceive an intending purchaser of ordinary intelligence using reasonable care. In an effort to prove specific instances of actual deception, plaintiff introduced the testimony of two women, housewives, the husband of one being employed by plaintiff and engaged in selling plaintiff's product. Each of these housewives testified that she ordered "Blue Sea" tuna from her grocer; that he sent her the "White Star" brand instead; that she did not discover the mistake until she had opened the can, but that if she had used ordinary precaution she could have seen the difference in the two cans. One of these witnesses, in response to a question if she would have any difficulty in noticing the difference in the cans if, instead of ordering the fish of her grocer—presumably by telephone—she personally had bought it at the store, said: "Why, I think I could notice the difference, yes—I could tell the difference by the looks of the can *immediately.*" The fact that the grocer did not deliver the brand of tuna ordered is not a determinative factor. There is no evidence to show that the grocer himself was deceived by any similarity in the labels. It is quite possible that he intentionally sought to palm off on his customers an article different from that ordered, trusting to their carelessness to obviate any detection of the intended deception. For, unfortunately, the habit that some dishonest dealers have of handing out anything they think they can sell to their customers, when they cannot supply

the particular article called for, is all too common.  **[5]** "The law of unfair competition does not protect purchasers against falsehoods which the tradesman may tell; the falsehood must be told by the article itself in order to make the rule of unfair competition applicable." (*Hill Bread Co.* v. *Goodrich Baking Co.* (N. J. Ch.), 89 Atl. 863.)  Each of the housewives whose testimony plaintiff relies on to show specific instances of actual deception admitted that, by using her eyes, she could readily detect the difference in the two packages.  "A resemblance which would deceive an expert or a very cautious purchaser may still give a right of action, but a resemblance which would deceive only an indifferent or careless purchaser gives no right of action. The true rule lies between these extremes, condemning what would be reasonably calculated to deceive the common or usual purchaser of the given article *when exercising ordinary care.*" (*Pacific Coast etc. Milk Co.* v. *Frye & Co., supra.*) (Italics ours.)  **[6]** As said in *Wrisley Co.* v. *Iowa Soap Co.*, 122 Fed. 796, [59 C. C. A. 54] : "One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it, has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition."  As regards plaintiff's goods, if they have acquired a title or denomination in the market, the only title or denomination which they can have acquired is that of "Blue Sea" brand of tuna; while as regards the defendant's goods, if they have acquired or should acquire a title in the market, it is or will be the title of "White Star" brand; and, aside from the color scheme, which is common to the trade, and the figure of the fish, which neither can appropriate exclusively, the differences in the two labels are so many and so prominent as to negative any probability that an ordinarily intelligent buyer, exercising ordinary care, will ever be so far deceived by any resemblance of defendant's to plaintiff's label as to buy one of these brands of tuna when ordering or intending to buy the other.

Judgment reversed.

Sloane, J., and Thomas, J., concurred.